Nell ASPERO, formerly Nell Aspero Rosenberry, Plaintiff-Appellant,

v.

SHEARSON AMERICAN EXPRESS, INC., Defendant-Appellee.

No. 84–6059.

United States Court of Appeals, Sixth Circuit.

Submitted March 26, 1985.

Decided July 17, 1985.

Thomas F. Johnston, Thomas F. Preston, Armstrong, Allen, Braden, Goodman, McBride and Prewitt, Memphis, Tenn., for plaintiff-appellant.

G. Patrick Arnoult and Russell L. Cherry, Memphis, Tenn., for defendant-appellee.

Before ENGEL and JONES, Circuit Judges, and HULL, District Judge.*

* Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

NATHANIEL R. JONES, Circuit Judge.

Nell Aspero appeals from the district court's order compelling arbitration in this tort suit against Shearson American Express, the brokerage firm with which she was formerly employed. This appeal requires interpretation of New York Stock Exchange Rule 347, which provides for settlement by arbitration of "[a]ny controversy ... arising out of the employment or termination of employment" of a registered broker. We hold that the present controversy arose out of Aspero's employment and termination of employment as a registered broker and, therefore, we affirm the district court.

Aspero joined Shearson's Memphis office as a broker in April, 1982 and was promoted to Second Vice-President of Investments in June, 1982. Her employment contract states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the Rules, Constitutions, or By-Laws of the organizations with which I register....

One organization with which Aspero registered was the New York Stock Exchange (NYSE), whose board has promulgated Rule 347:

> *Any controversy* between a registered representative and any member or member organization *arising out of the employment or termination of employment* of such registered representative by and with such member or member organization shall be settled by arbitration....

(emphasis added).

Shearson disputes the following allegations, on which there have been no findings of fact, but maintains that all of the alleged facts arise out of Aspero's employment and termination. Aspero contends that the actionable events were tortious acts which Shearson committed subsequent to her resignation and which did not arise out of her employment with Shearson.

In August 1982, Aspero opened a discretionary trading account on behalf of Timothy Heath. In December 1982, after Heath apparently complained about substantial losses in the account, its management was taken over by James Siegfried, the Vice-President and Resident Manager of Shearson's Memphis office. On March 2, 1983, Siegfried demanded that Aspero sign a $20,000 promissory note representing the losses in the Heath account to that date. Siegfried also asked for Aspero's resignation. Aspero alleges that Siegfried threatened to fire her for making unauthorized trades in the Heath account. She alleges that she then requested meetings with Heath and with upper level Shearson management, and sought arbitration. On March 4, 1983, Aspero submitted her resignation. According to the complaint, Siegfried both promised to treat the departure as a resignation rather than as a termination and promised to give Aspero a good reference for future employment. Thereafter, Siegfried allegedly told several potential employers that Aspero was terminated for unauthorized trading rules violations. Siegfried also allegedly submitted false Uniform Termination Notice for Securities Industry Registration ("U–5") forms to various exchanges and state offices stating that Aspero was discharged due to compliance problems.

■ On these alleged facts, Aspero's claims for defamation, invasion of privacy, and intentional infliction of emotional distress by her former employer Shearson arise out of her employment with Shearson and termination of her employment with Shearson, so that the district court properly applied NYSE Rule 347 to require arbitration. Our analysis begins by recognizing that any duty to arbitrate is founded on a contractual obligation. Thus, a party may not be compelled to arbitrate unless the party has agreed to submit the dispute to arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). A court must determine the intent of the parties as evidenced by the contract language. *Morgan v.*

*Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir.1984). Yet, federal policy favors arbitration. *See* 9 U.S.C. §§ 1–14 (1982). *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*

■ Aspero first claims that this action does not arise out of her employment or termination because the acts by Shearson of which she complains occurred after her contractual relationship with Shearson had been severed. Although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court concluded that the parties' obligations under an arbitration clause that was part of a collective bargaining agreement "survived contract termination when the dispute was *over an obligation arguably created by the expired agreement.*" *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 252, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300 (1977) (discussing *John Wiley*) (emphasis added). In *Nolde*, the Supreme Court determined that an employer had a continuing duty to arbitrate a severance-pay dispute.

> [I]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract.

*Nolde*, 430 U.S. at 253, 97 S.Ct. at 1073. In a dispute concerning the scope of NYSE Rule 347, the arbitration clause presently under scrutiny, this Court considered the suit of two former brokers against their former employer for amounts allegedly due under a profit-sharing plan. Although the plaintiffs alleged that their profit-sharing units became payable upon severance of employment, the Court found that "the controversy clearly arises out of the 'employment or termination of employment' of

plaintiffs," and required the employer to arbitrate. *Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 523 F.2d 433, 434, 437 (6th Cir.1975). The present controversy may arise out of Aspero's employment or termination of employment although Shearson's challenged acts occurred after its employment contract with Aspero had ended.

Aspero maintains further, however, that the time when the underlying contract has been terminated continues to be an important factor when a suit does not seek to enforce contractual rights created by the agreement. In *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir. 1983), a split panel of the Second Circuit held that, under NYSE Rule 347, "only grievances based on conditions arising 'during the term of the agreement to arbitrate' are arbitrable after the term has ended." *Id.* at 81 (quoting *Proctor & Gamble Independent Union v. Proctor & Gamble Manufacturing Co.*, 312 F.2d 181, 186 (2d Cir. 1962)). *Coudert* involved a tort suit by a broker who claimed that after she voluntarily resigned her former employer libeled her to other employees and her clients, and falsely filed termination forms with several exchanges which stated that she was fired for cause. *Id.* at 80. The Second Circuit held that the plaintiff was not required to arbitrate her claim because "the dispute itself does not pertain to employment or termination of employment; the tortious acts are all claimed to have occurred after such termination." *Id.* at 82. If this Court were to follow *Coudert*, Aspero's claim would not be subject to arbitration; she advances nearly identical tort actions based on similar behavior by her former employer, and her employment was governed by the same NYSE rule.

The Eighth Circuit, however, has severely criticized *Coudert's* failure to understand that "the plain language of Rule 347 does not limit arbitration to contractual disputes." *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir.1984). The Eighth Circuit in *Morgan* looked neither to the timing of the action

nor to the legal basis of the action as tort or contract, but instead evaluated whether the lawsuit involved "significant aspects of the *employment relationship*, including but not limited to explicit contractual terms." *Id.* at 1167. When the employee's role as a *broker* or the brokerage house's role as an employer of brokers is the "specific source" from which a controversy arises, even a controversy that is not based upon contractual rights or duties will be subject to arbitration under Rule 347.

Morgan was a broker who alleged that his former superiors at Smith Barney "scrounged up" complaints from his former customers and communicated them to several securities enforcement agencies. He also alleged that Smith Barney personnel deliberately and falsely told customers that Morgan's broker's license had been suspended. The court found that these claims implicated Morgan's brokerage customers, his status as a broker, his handling of customer accounts, and that in general the findings necessary to resolve these issues bore a "significant relationship" with "his employment at Smith Barney." *Id.* at 1167. Therefore, although the challenged acts occurred after Morgan left Smith Barney, the related controversy arose out of his employment as a broker and was subject to arbitration under NYSE Rule 347. By contrast, the court found that Morgan's allegations that Smith Barney personnel told his former coworkers that he had stolen items from their desks at night did not arise out of his employment or termination of employment as a broker. The court stated:

> No customers or securities agencies are implicated, and no significant issue of Morgan's job performance *qua* broker is implicated.

*Id.* at 1168.

■ *Morgan* is well-reasoned. We hold that when a party subject to NYSE Rule 347 seeks to compel arbitration of a claim which is brought after the termination of the employment relationship, and which is not based upon a contractual right or duty created by the employment agreement (for example by a severance pay clause or a non-solicitation agreement, which are both intended to operate following termination), the proper question is whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship.

■ When this test is applied to the underlying facts of Aspero's claims, it is clear that her claims arise out of her employment and termination as a broker and are properly subject to arbitration. Each claim depends upon a determination of Aspero's performance as a broker while employed by Shearson. The brokerage house's claim that Aspero engaged in unauthorized trading goes to the core of her role as a broker. If Shearson proves its case, Aspero was properly terminated. The factual essence of this lawsuit arises out of both Aspero's employment by Shearson and her alleged termination by Shearson. That Shearson's actions occurred following Aspero's allegedly voluntary resignation is relevant but in no way dispositive of this case. Whether she was fired or freely resigned is a fact yet to be determined.

For the foregoing reasons, the district court's order compelling arbitration is AFFIRMED.