**Nancy W. McGINNIS,**
**Plaintiff-Appellant,**

v.

**E.F. HUTTON AND COMPANY, INC.,**
**Defendant-Appellee.**

No. 86–5084.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 18, 1986.
Decided March 4, 1987.

Henry V. Sutton, Mark W. Garrett (argued), Memphis, Tenn., for plaintiff-appellant.

Frederick J. Lewis (argued), King W. Rogers, Glankler, Brown, Gilliland, Chase, Memphis, Tenn., for defendant-appellee.

Before KEITH and RALPH B. GUY, Circuit Judges, and EDGAR *, District Judge.

KEITH, Circuit Judge.

Plaintiff, Nancy W. McGinnis, appeals from the district court's order compelling her wrongful discharge dispute to be submitted to arbitration in a case where plaintiff sued defendant, E.F. Hutton ("Hutton"). On appeal, plaintiff contends that although a written arbitration agreement existed between her and Hutton, this case presents issues which are outside the scope of the agreement.[1] After *de novo* review of the record in this case, we find that the district court correctly interpreted the arbitration agreement and appropriately ordered arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, 4. We affirm the order of Chief Judge Odell Horton.

## FACTS

Plaintiff worked for defendant E.F. Hutton for approximately seven years before being terminated in February, 1985. During that seven year period, plaintiff performed various duties before she became operations manager. The conditions of her employment made it necessary for plaintiff to register with the NYSE. Pursuant to registration requirements, plaintiff filled out and executed an Uniform Application for Securities Industries Registration ("U–4"). By executing the U–4 agreement, plaintiff agreed to arbitrate "any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitution or by-laws of the organizations which I register ..." The above language in the U–4 agreement is incorporated by NYSE Rule 347. Rule 347 states in pertinent part that:

> Any controversy between a registered representative and any member or member organization *arising out of the employment or termination of employment* of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these Rules. (emphasis added).

Before we can interpret the meaning of this arbitration clause, it is necessary to analyze the kind of controversy which exists here between plaintiff and Hutton and the kind of relief sought by plaintiff.

Plaintiff contends that while working at Hutton, she was subjected to "extreme severe mental and emotional distress ... to force her to resign, and that when said plan

---

* Honorable R. Allan Edgar, United States District Court Judge for the Eastern District of Tennessee, sitting by designation.

1. Plaintiff argues that the district court erred by ordering her to submit all of the allegations in her complaint to arbitration because: (1) she was never employed by Hutton as a stockbroker; (2) she never conducted any type of transaction through the New York Stock Exchange ("NYSE"); (3) she was not allowed to act in the capacity as a broker; (4) she never received any commissions or earnings from any transactions; and (5) she never became registered in the state in which she worked.

failed, [Hutton] used an instance of plaintiff's refusal to participate in unlawful activity as a reason to terminate her employment."[2] More specifically, plaintiff's refusal to conduct an audit for the option exchange auditors precipitated her discharge. However, plaintiff claims that since conducting the audit would have impliedly condoned illegal and improper activities, she was justified in her refusal to participate.

After her discharge, plaintiff filed the instant case in the Tennessee State Court alleging various common law torts including outrageous conduct, breach of contract and retaliatory discharge. The case was also filed in federal court based on diversity of citizenship. Defendant Hutton never answered the complaint, but instead filed a motion to compel arbitration which the district court granted. The central issue before this court is whether a non-broker who signs a U–4 agreement must submit her wrongful discharge claim to arbitration pursuant to NYSE Rule 347.

### DISCUSSION

■ Generally, two principles guide the determination of arbitrability. First, arbitration is a contractual obligation which is governed by general principles of contract interpretation. Second, under federal law, when the language is ambiguous or unclear, any doubts concerning the scope of arbitrability should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see also, Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1449–51 (9th Cir.1986); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir.1984).

In *Aspero v. Shearson/American Express, Inc.*, 768 F.2d 106 (6th Cir.) *cert. denied*, —— U.S. ——, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985), this circuit decided a case raising issues similar to those present-ed in the instant case. Aspero resigned from her position as a registered broker for defendant after her supervisor threatened to fire her for making unauthorized trades with a client's account. *Id.* at 107. At the time Aspero resigned, her supervisor promised to treat her departure as a voluntary resignation and to provide her with good references for future employers. Instead, he told several potential employers that she was fired for unauthorized trading rules violations and filed termination forms with several exchanges and state offices. *Id.*

Aspero sued her former employer for defamation, invasion of privacy and intentional infliction of emotional distress. Like the plaintiff in the present case, Aspero was subject to NYSE Rule 347 which required arbitration of controversies stemming from employment terminations. Aspero unsuccessfully sought to avoid the effect of the arbitration requirement by arguing that the alleged tortious conduct took place after her employment terminated. In rejecting this claim, this court held that "although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated." *Aspero*, at 108.

■ In the instant case, plaintiff makes a somewhat different argument in an attempt to avoid the arbitration requirement. Plaintiff specifically contends that she was not a broker and never performed any broker's duties. It is not clear from the record what plaintiff's duties were at Hutton. However, our examination of the facts reveal that she did not work as a broker; she did not place orders, make sales or earn commissions. This notwithstanding, we hold that our broad holding in *Aspero* extends to non-brokers who sign U–4 agreements and are subject to NYSE Rule 347.

Plaintiff contends that this is not the type of dispute which concerns the NYSE or business conducted with the Exchange. To support this argument, plaintiff relies on cases which apply Rule 347 to brokers.

---

2. In her twenty-page complaint, plaintiff alleges that Hutton committed numerous unethical, dishonest and illegal acts. Specifically, plaintiff alleges that Hutton gave inaccurate and false information to investors, operated services that no one was qualified to operate, committed forgery and utilized insider information to solicit purchasers prior to public offering.

Principally, plaintiff relies upon the Eighth Circuit holding in *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984). We believe plaintiff's reliance on *Morgan* is misplaced.

In *Morgan*, the issue was whether Rule 347 required arbitration of *tort* claims as well as contract claims.[3] Given that the plaintiff was a broker in *Morgan*, the court of course analyzed the cases in terms of the employment status of the plaintiff. However, there is no language in *Morgan* which even hints that its holding is limited to brokers. On the contrary, the court in *Morgan* indicated that its holding would have widespread effect. Specifically, the court broadly interpreted the phrase from Rule 347 "arising out of employment or termination of employment" and held that "the language requires arbitration of tort as well as contract claims which involve significant aspects of the employment relationship, including but not limited to explicit contractual terms." *Morgan*, 729 F.2d at 1167.

Furthermore, the plain language of Rule 347 encompasses employees who are registered with the NYSE and does not condition the requirement of arbitration on those registered representatives actually working as brokers. In this case, plaintiff fulfills the two requirements of NYSE Rule 347: 1) she was a registered representative within the NYSE, and 2) her claims arise out of her employment or termination of employment with a member of the NYSE. Neither the U–4 agreement nor Rule 347 contain any reference to the term broker. Thus, we conclude that contract and tort claims that relate to a registered representative's employment with a brokerage firm, even if the representative is not a broker, are properly arbitrable under NYSE Rule 347.

■ Plaintiff also argues that Rule 347 is inapplicable because her termination was not related to the stock exchange business, but rather concerned Tennessee tort law. We disagree. A review of plaintiff's complaint reveals that her claims are grounded in the standards and practices of the industry.[4] Consequently, we believe an arbitration panel of industry experts is at least as well qualified as a federal court to deal with the issues raised by the complaint. We can imagine little which would be of greater concern to the Exchange than the claims by one of its registered members that a prestigious brokerage house was involved in the kind of conduct alleged here. These charges implicate the integrity of the market and the brokerage business in general, even though raised in the context of an alleged individual retaliatory termination. Plaintiff's claim that the arbitrator would bring no unique expertise because Tennessee tort law is involved ignores the fact that the resolution of this dispute will primarily involve a determination of the truth of plaintiff's claims of illegal and improper brokerage house practices. Although Tennessee tort law may provide the relief, the initial and fundamental inquiry will concern trade practices.

3. Morgan was a broker who alleged that his former superiors at Smith Barney "scrounged up" complaints from his former customers and informed several securities enforcement agencies. Morgan also alleged that Smith Barney personnel falsely and deliberately informed customers that his broker's license had been suspended. The Eighth Circuit found that these claims implicated Morgan's brokerage customers, his status as a broker, his handling of customer accounts, and that in general, the findings necessary to resolve these issues bore a "significant relationship" with his employment at Smith Barney. Consequently, the court found that although the challenged acts occurred after Morgan left Smith Barney, the related controversy arose out of his employment as a broker and was a subject to arbitration under NYSE Rule 347.

4. For example, plaintiff alleges that Hutton's consulting services division violated ERISA laws and other federal and state laws, that Hutton's consulting services division furnished clients with false risk return reports in violation of federal and state securities laws, that Hutton established an "institutional desk" run by a non-registered employee and this fact was unknown to Hutton's clients, that Hutton's employees forged customers' names to documents required by federal and state securities laws and regulations, that Hutton employees forged documents to be audited by Option Exchange Auditors, and therefore her failure to participate in such activities led to her termination and the allegedly slanderous and defamatory remarks by Hutton.

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, mandates that a district court, after concluding that any issue in a case before it is referrable to arbitration under a written agreement shall, upon application of one of the parties, stay the proceedings until arbitration is completed. The court, upon application of a party entitled to arbitration, may also order the arbitration to proceed. 9 U.S.C. § 4. Plaintiff does not question the existence of the arbitration agreement. Since we find her arguments as to its inapplicability without merit, we hold, as did the Honorable Judge Horton, that this wrongful discharge suit should be arbitrated.

Accordingly, for the foregoing reasons, the district court's order compelling arbitration is AFFIRMED.