**Edward Reddy HENDERSON, Jr., Plaintiff**

v.

**TUCKER, ANTHONY AND RL DAY, Defendant.**

**Civ. A. No. 89–0188 L.**

United States District Court, D. Rhode Island.

Oct. 2, 1989.

Brian G. Goldstein, Kirshenbaum & Kirshenbaum, Cranston, R.I., for plaintiff.

Richard M. Borod, Edwards & Angell, Providence, R.I., for defendant.

## *MEMORANDUM AND ORDER*

LAGUEUX, District Judge.

This matter is presently before the Court on defendant Tucker Anthony's motion to dismiss or stay these judicial proceedings pending arbitration. Plaintiff, Edward Reddy Henderson, Jr., in the multiple count complaint essentially alleges that his former employer wrongfully terminated his employment. Tucker Anthony argues that plaintiff's claims fall within the ambit of an arbitration agreement signed by plaintiff at

the commencement of his employment. The agreement in question derived from the Uniform Application for Securities Industry Registration or Transfer, Form U–4. Form U–4 incorporates New York Stock Exchange (NYSE) Rule 347. Plaintiff argues that NYSE Rule 347 deals primarily with wage claims and issues of job performance and is, therefore, inapplicable.

## BACKGROUND

On or about July 17, 1985, plaintiff entered into an employment contract to be a salesman of securities in Massachusetts with defendant stock brokerage firm. In so doing, plaintiff executed an application for the securities registration, Form U–4. In or around June of 1986, the Securities and Exchange Commission (SEC) filed a complaint against Henderson alleging violations of Section 10(b) of the Securities Exchange Act. Thereafter, it is alleged that an officer of Tucker Anthony told Henderson that the Commission would drop the complaint if plaintiff would sign a Consent Decree and if he signed, he would not be fired. Plaintiff signed the Consent Decree on June 27, 1986. On or about July 8, 1986, the Wall Street Journal published an article regarding the SEC's complaint against Henderson. Within one week of the article's publication, Tucker Anthony officials asked plaintiff to resign. Plaintiff resigned on or about July 17, 1986.

The complaint, in six Counts, alleges that Tucker Anthony wrongfully terminated plaintiff's employment. One count calls for the payment of commissions as well as the cost of a trip to Puerto Rico won by plaintiff in a sales contest. The other counts are gounded on the alleged bad faith of Tucker Anthony and the claim that it breached an implied agreement to deal fairly with Henderson.

Henderson bases his bad faith and breach of contract claims on two alleged acts of Tucker Anthony officials. He first contends that defendant's branch manager falsely assured him that signing the Consent Decree would have no effect on his employment. Henderson further alleges that several officials of defendant forced his resignation by threatening to fire him if he refused to resign. Plaintiff asserts that Tucker Anthony justified its resignation request by citing an "unwritten rule" that employees' names be kept out of the media.

Tucker Anthony filed its motion to dismiss or stay all further judicial proceedings arguing that the Federal Arbitration Act, 9 U.S.C. § 2 *et seq.*, requires this Court to order arbitration because Henderson agreed, by signing Form U–4, to arbitrate employment disputes. In opposition, plaintiff contends that this dispute goes beyond the employment contract and does not involve questions of job performance or compensation, thus arbitration is precluded. At the conclusion of oral arguments, this Court took this matter under advisement. It is now in order for decision.

## DISCUSSION

Section 2 of the Federal Arbitration Act provides that written arbitration provisions within contracts involving commerce are valid and enforceable. 9 U.S.C. § 2. Section 3 of the same Act specifies that a court "shall ... stay the trial of the action until such arbitration," if it is found that the issues are subsumed within the particular arbitration agreement. 9 U.S.C. § 3. The United States Supreme Court has held that the "[Federal Arbitration]" Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct ... arbitration." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis included). This federal policy favoring arbitration is so strong that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); *Iacono v. Drexel Burnham Lambert, Inc.,* 715 F.Supp. 18, 22 (D.R.I.1989).

Since Henderson argues that arbitration should be limited to compensation disputes, he cannot now maintain that his demands

for his commissions and his trip to Puerto Rico are not subject to arbitration. *See Perry v. Thomas*, 482 U.S. at 490–91, 107 S.Ct. at 2526 (Federal Arbitration Act covers wage disputes). Plaintiff, however, raises two propositions to support his argument that this Court should not order arbitration of the other claims. First, he contends that the bad faith/unfair dealings claims do not fit within the NYSE Rule 347 definition of "arising out of employment," because the claims do not require an evaluation of his job performance. Secondly, plaintiff proposes that courts must review all bad faith/unfair dealings claims when they arise in employment at will situations. Plaintiff's contentions are without merit.

The law of contracts governs arbitration agreements. Henderson executed two arbitration contracts which must be reviewed. Form U–4 provides "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register." Under NYSE Rule 347, "[a]ny controversy between a registered representative and any member or member organization arising out of employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration ..." This Court must determine whether these arbitration agreements control this controversy. *See Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir.1984).

■ The key words "arising out of employment or termination of employment" within NYSE Rule 347 have received liberal interpretations by the federal courts. *See id.* at 1167 (Rule 347 includes arbitration of tort as well as contract disputes); *McGinnis v. E.F. Hutton and Co.*, 812 F.2d 1011, 1013–14 (6th Cir.) (wrongful discharge claim of non-broker arbitrable under broad language of Rule 347), *cert. denied*, 484 U.S. 824, 108 S.Ct. 87, 98 L.Ed.2d 49 (1987). The Rule was intended to govern *any* controversy between employers and employees. *Ayres v. Merrill Lynch, Pierce, Fenner & Smith*, 538 F.2d 532, 535

(3d Cir.) (dispute between employee as stockbroker against employer as purchaser not arbitrable), *cert. denied*, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). The issue of an employee's job performance provides only one of many arbitrable disputes. *See Aspero v. Shearson American Express, Inc.*, 768 F.2d 106, 109 (6th Cir.) *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). Courts have interpreted Rule 347 to encompass tort claims, *Morgan*, 729 F.2d at 1167, statutory claims, *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), and contract claims which arise from employment relationships. The Eighth Circuit, in *Morgan*, noted that the " 'arising out of' ... language reveals that the specific source from which a controversy must arise is not the employment (or termination of the employment) *contract;* it is simply employment or termination of employment." *Morgan*, 729 F.2d at 1167 (emphasis included). Whether or not disputes fall within NYSE Rule 347 depends on whether the lawsuit involves "significant aspects of the employment relationship" *Aspero*, 768 F.2d at 109.

The Sixth Circuit, interpreting the "significant aspects of the employment relationship" language, noted that "[w]hen the employee's role as a broker or the brokerage house's role as an employer of brokers is the 'specific source' from which a controversy arises, even a controversy that is not based upon contractual rights or duties will be subject to arbitration under Rule 347." *Id.* (discussing *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984)). In *Aspero*, the broker filed suit against her employer alleging defamation, invasion of privacy, and intentional infliction of emotional distress. *Id.* at 107. Aspero initiated her claims when her employer, after promising to provide Aspero with positive references, lied to Aspero's potential employers by telling them that she had been fired for unlawful trading. *Id.* Finding that the employer's post-employment conduct sufficiently touched upon the parties employment relationship, the

court upheld the district court's arbitration order. *Id.* at 109.

In a Second Circuit case, which reviewed the same tort claims as discussed in *Aspero*, the court found against arbitration but emphasized in its reasoning that the tortious conduct had occurred after the employee had voluntarily terminated her employment. *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78, 82 (2d Cir.1983). More notably, the *Coudert* court differentiated the claims before it from a claim for wrongful termination, thereby, implying that any wrongful termination disputes should be arbitrated. *Id.*

■ Henderson's wrongful termination suit falls squarely within NYSE Rule 347's language. The Rule itself refers to controversies arising out of employment or the termination of employment. Although perhaps not based on expressed contractual rights or duties, plaintiff's lawsuit, by its very nature, involves "significant aspects" of Henderson and Tucker Anthony's employment relationship. The challenged conduct occurred during the course of Henderson's employment. Henderson attacks Tucker Anthony's role in his alleged forced resignation. Resolution of plaintiff's bad faith/unfair treatment claim will require an examination of Tucker Anthony's role as employer and a determination of whether it acted properly within the bounds of that employment relationship.

Plaintiff's attempt to denominate the relationship as an employment at will is of no consequence for purposes of resolving this issue. Although not specified in the Complaint, this Court assumes that plaintiff based his wrongful termination claim on Massachusetts law. Massachusetts stands alone in recognizing an implied covenant not to discharge an employee at will except for just cause. *See Cummins v. EG & G. Sealol, Inc.*, 690 F.Supp. 134, 137 (D.R.I. 1988); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977). Rhode Island law, on the other hand, does not generally recognize wrongful discharge claims by employees at will. *See Cummins*, 690 F.Supp. at 135. Under the law, whether the employment exists at will or by contract determines which legal avenues are open to plaintiffs. The employment relationship's characterization, however, does not affect whether or not the parties must submit to arbitration. As discussed previously, the important consideration here is not whether the controversy involves an employment contract but whether the controversy implicates the employment relationship. *See Morgan*, 729 F.2d at 1167; *Aspero*, 768 F.2d at 109. When a party relies on NYSE Rule 347 to compel arbitration, courts need only determine the existence and scope of the arbitration agreement. *See Zdeb v. Shearson Lehman Bros.*, 674 F.Supp. 812, 813 (D.Colo. 1987).

■ Finally, this Court rejects plaintiff's contention that NYSE Rule 347 does not require arbitration of a breach of implied covenant of good faith and fair dealings claim. Whether based on an alleged violation of state or federal laws, once a court determines that an employee's claim arises out of employment, it must stay the judicial proceedings pending arbitration. *McGinnis*, 812 F.2d at 1015. Having found Henderson's wrongful discharge claims and his wage claim to have arisen from his employment relations with Tucker Anthony, this Court must stay these judicial proceedings.

## CONCLUSION

Defendant's motion to dismiss is denied. Defendant's motion to stay these proceedings pending arbitration is granted.

*It is so Ordered.*