In re William Earl BRADFORD,
Lenore C. Bradford, Debtors.

William Earl BRADFORD, Plaintiff,

v.

J.C. BRADFORD & CO., Defendant.

Bankruptcy No. 93–14682.
Adv. No. 94–1098.

United States Bankruptcy Court,
E.D. Tennessee,
Southern Division.

April 14, 1995.

Mark T. Young & Associates, Hixson, TN, for plaintiff.

Miller & Martin, Chattanooga, TN, for defendant.

### *MEMORANDUM*

R. THOMAS STINNETT, Bankruptcy Judge.

Mr. William Earl Bradford ("Mr. Bradford"), the debtor in this voluntary Chapter 7 case, filed this adversary proceeding against J.C. Bradford & Company ("J.C. Bradford") for employment discrimination. He alleges that J.C. Bradford fired him solely because of his bankruptcy, a violation of Bankruptcy Code § 525(b) [1].

---

1. 11 U.S.C. § 525(b) provides:

(b) No private employer may terminate the employment of, or discriminate with respect to employment, against an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act ... solely because such debtor or bankrupt under the Bankruptcy Act:

J.C. Bradford has filed a motion to dismiss or compel arbitration. This is not a core proceeding, but the parties have consented to the jurisdiction of this court subject to J.C. Bradford's alleged right to compel arbitration. 28 U.S.C. § 157(c)(2). Because the court is of the opinion J.C. Bradford may have the right to compel arbitration, subject to the rules of the New York Stock Exchange, Inc. ("NYSE"), the motion will be sustained and this proceeding will be stayed.

## I.

The facts necessary for disposition of this motion are undisputed. In December 1993, Mr. Bradford accepted a position with J.C. Bradford as a broker trainee. He was told to report for work on January 3, 1994. Later in December 1993, Mr. and Mrs. Bradford filed a chapter 7 bankruptcy case.

Mr. Bradford reported for work at J.C. Bradford on January 3, 1994. On January 4, 1994, Mr. Bradford signed a Broker Trainee Agreement ("Trainee Agreement"). He also signed a Uniform Application for Securities Industry Registration or Transfer, commonly called a U–4 ("U–4"). J.C. Bradford fired Mr. Bradford later the same day.

J.C. Bradford relies upon the arbitration clauses in the Trainee Agreement and the U–4 to require Mr. Bradford to submit his claim to arbitration. The Trainee Agreement provides:

> I have made application to Bradford for participation in its training program leading to registration with the New York Stock Exchange as a Registered Representative, and/or the Commodity Futures Trading Commission as an Associated Person, and thereafter, a position with Bradford as a Broker.
>
> 9. This agreement shall be construed and the validity, performance and enforcement thereof shall be governed by the laws of the State of Tennessee.
>
> 10. Any controversy arising under this Agreement shall be submitted to binding arbitration before the New York Stock Exchange, Inc., and be resolved in accordance with the applicable rules then in effect. . . .

The instructions for the U–4 indicate that an individual applies for registration by filing the U–4 with the Central Registration Depository (CRD). The instructions require the filing of a complete U–4 if "the applicant has never been registered." The U–4 includes the following terms relevant to arbitration:

> THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY
>
> . . . .
>
> 2. I apply for registration with the jurisdictions and organizations indicated in Item 10 as may be amended from time to time and, in consideration of the jurisdictions and organizations receiving and considering my application, I submit to the authority of the jurisdictions and organizations and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates or incorporation, by-laws and rules and regulations of the jurisdictions and organizations as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all the requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the jurisdictions and organizations, subject to right of appeal or review as provided by law.
>
> . . . .
>
> 5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitrations award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

Item 10 of the U–4 lists 10 organizations with a check box for each. The list includes the NYSE and the National Association of Securities Dealers ("NASD"). The instructions for the U–4 direct the employer to complete items 1–12. The instructions for Item 10 provide:

> Indicate the self-regulatory organizations and jurisdictions where registration is being sought. The checking of a box in Item 10 constitutes an application for registration via the CRD and will cause the applicable fee to be charged to the broker-dealer CRD account.

J.C. Bradford has filed a copy of Mr. Bradford's U–4 completed only by him. None of the boxes in Part 10 are checked.

## II.

■ J.C. Bradford first contends that arbitration may be compelled under the U–4. Pursuant to the U–4, when a person registers with the NYSE or the NASD, the registrant becomes a party to a contract among the members ("membership agreement"). The membership agreement includes the organization's arbitration rules. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Willis v. Dean Witter Reynolds,* 948 F.2d 305 (6th Cir.1991); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.,* 587 F.Supp. 1520 (N.D.Ga. 1984); *Legg, Mason & Co. v. Mackall & Coe, Inc.,* 351 F.Supp. 1367 (D.D.C.1972).

The membership agreement also evidences a transaction in interstate commerce. That makes the membership agreement and the parties to it subject to the Federal Arbitration Act. 9 U.S.C. §§ 1 & 2; *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Willis v. Dean Witter Reynolds,* 948 F.2d 305 (6th Cir.1991); *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698 (2nd Cir.1985); *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163 (8th Cir.1984).

■ The Federal Arbitration Act requires the courts to enforce arbitration agreements in contracts evidencing a transaction in interstate commerce. 9 U.S.C. §§ 1 & 2. It was enacted to overcome the courts' former reluctance to experiment with alternative dispute resolution. *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

■ The Federal Arbitration Act does not apply to employment contracts of seamen, railroad employees, or any other class of workers engaged in interstate commerce. 9 U.S.C. § 1. This exception does not apply to the membership agreement that results from registration with the NYSE or the NASD because it is not an employment contract. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Willis v. Dean Witter Reynolds,* 948 F.2d 305 (6th Cir.1991).

■ Mr. Bradford contends that he never became a party to the membership agreement. The court agrees. When Mr. Bradford signed the U–4, he gave J.C. Bradford the authority to complete it and file it; however, J.C. Bradford fired Mr. Bradford before he completed and filed the U–4. This revoked J.C. Bradford's authority to complete and file the U–4. *See Preszler v. Dudley,* 153 Cal.App.2d 120, 314 P.2d 138 (1957); *Van Houten v. Trust Co. of Chicago,* 413 Ill. 310, 109 N.E.2d 187 (1952); *Southwest Virginia Hospitals v. Lipps,* 193 Va. 191, 68 S.E.2d 82 (1951); 3 Am.Jur.2d, *Agency* §§ 47–50 & § 60 (1986). As a result, Mr. Bradford never became a party to the membership agreement among the members of the NYSE, the NASD, or any other organization listed in Part 10 of the U–4. *See Brown v. Merrill Lynch, Pierce, Fenner & Smith,* 664 F.Supp. 969 (E.D.Pa.1987).

Although some cases suggest merely signing the U–4 imposes the burdens of membership, those cases apparently involve U–4's that had been completed and filed. *Chisolm v. Kidder, Peabody Asset Management, Inc.,* 810 F.Supp. 479 (S.D.N.Y.1992); *Cherry v. Wertheim Schroder & Co.,* 868 F.Supp. 830 (D.S.C.1994); *see also McGinnis v. E.F. Hutton & Co.,* 812 F.2d 1011 (6th Cir.1987). The critical question is whether the U–4 made Mr. Bradford a party to the membership agreement. Because the U–4 was never filed, Mr. Bradford remained a stranger to the member organizations. Thus, the un-

completed U-4 does not allow J.C. Bradford to compel arbitration.

## III.

Although the court has concluded that Mr. Bradford is not bound by the arbitration provisions of the U-4, J.C. Bradford also insists that arbitration may be compelled pursuant to the Trainee Agreement.

■ Decisions from other courts lead to the conclusion that the hiring of a broker or broker trainee by a brokerage firm that is a member of the NYSE is a transaction in interstate commerce. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro*, 577 F.Supp. 616 (W.D.Mo.1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Thomson*, 574 F.Supp. 1472 (E.D.Mo.1983); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 587 F.Supp. 1520 (N.D.Ga.1984); *Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104 (N.D.Ill.1980). The Federal Arbitration Act applies even if Mr. Bradford never did any work for J.C. Bradford.

■ The Act's exception for employment contracts does not apply to the Trainee Agreement. The exception has been treated as applying to the employment contracts of workers engaged in moving tangible property in interstate commerce and not to the employment contracts of brokers or trainees. 9 U.S.C. § 1; *Dickstein v. duPont*, 443 F.2d 783 (1st Cir.1971); *Tenney Engineering, Inc. v. United Electrical Workers*, 207 F.2d 450, 452 (3rd Cir.1953); *DiCrisci v. Lyndon Guaranty Bank*, 807 F.Supp. 947 (W.D.N.Y. 1992). The Sixth Circuit has not ruled directly on the issue, but decisions in similar cases indicate a consistent philosophy. *Compare Bacashihua v. United States Postal Service*, 859 F.2d 402 (6th Cir.1988) *and Stokes v. Merrill Lynch, Pierce, Fenner & Smith*, 523 F.2d 433 (6th Cir.1975).

■ Mr. Bradford asserts that his claim under § 525(b) of the Bankruptcy Code comes under an unwritten exception for claims under federal statutes. The Supreme Court has put strict limits on the ability of the courts to exclude claims under federal statutes from arbitration agreements subject to the Federal Arbitration Act. If Congress intended to prohibit arbitration of claims under federal statutes, the courts should be able to find that policy expressed in the statutes or their legislative history. If not, then arbitration will be required unless the party opposing it proves an inherent conflict between arbitration and the federal statutes that gave rise to the claim. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991).

Mr. Bradford relies on the legislative history of § 525. The court has reviewed it and has not found any expression of an intent by Congress to prohibit arbitration of claims under § 525(b). Next, the court must determine whether arbitration inherently conflicts with the administration of bankruptcy cases or the integrity of the bankruptcy system.

There are some bankruptcy disputes in which the other party cannot compel arbitration despite the debtor's arbitration agreement and the Federal Arbitration Act. The court will not attempt to state a general rule as to what proceedings fall into this category. Other courts have stated general principles, but their decisions reveal the need to focus on the facts of each case. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3rd Cir.1989); *United States Lines, Inc. v. American Steamship Owners Mut. Prot. & Indem. Association, Inc.*, 169 B.R. 804 (Bankr.S.D.N.Y.1994); *After Six, Inc. v. Abraham Zion Corp.*, 167 B.R. 35 (E.D.Pa.1994); *In re Chorus Data Systems, Inc.*, 122 B.R. 845 (Bankr.D.N.H. 1990); *In re FRG*, 115 B.R. 72 (E.D.Pa. 1990).[2]

Since the Supreme Court's decision in *Gilmer*, the federal courts have required arbitration of employment discrimination claims under various federal statutes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26

---

**2.** The question is somewhat different when the debtor or a representative of the bankruptcy estate seeks to compel arbitration under the debtor's pre-bankruptcy agreement. *See In re Al-*

*Cam Development Corp.*, 99 B.R. 573 (Bankr. S.D.N.Y.1989); *In re Chorus Data Systems, Inc.*, 122 B.R. 845 (Bankr.D.N.H.1990).

(1991); *Hirras v. National R.R. Passenger Corp.*, 10 F.3d 1142, 1146 (5th Cir.1994) (sex discrimination); *Saari v. Smith Barney, Harris Upham & Co.*, 968 F.2d 877, 882 (9th Cir.) (Employee Polygraph Protection Act), cert. denied, — U.S. —, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); *Bierdeman v. Shearson Lehman Hutton, Inc.*, 963 F.2d 378 (9th Cir. 1992), *reversing* 744 F.Supp. 211 (N.D.Calif.1990); *Mago v. Shearson Lehman Hutton Inc.*, 956 F.2d 932 (9th Cir.1992) (sex discrimination); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991) (Title VII); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991) (sex discrimination); *DiCrisci v. Lyndon Guar. Bank*, 807 F.Supp. 947 (W.D.N.Y.1992) (sex discrimination).

Section 525(b) of the Bankruptcy Code specifically and emphatically prohibits discrimination by an employer based on the employee's having taken advantage of a right created by federal statutes, i.e., the right to file for bankruptcy protection from creditors. And, while this court has jurisdiction to hear and determine disputes arising under Title 11, it does not follow that the court must determine all such proceedings in order to assure that Title 11 is properly enforced. Nothing in the Bankruptcy Code expresses or even suggests that this was the intent of Congress. Furthermore, the court has found nothing in the Bankruptcy Code or the jurisdictional statutes that expresses an intent by Congress to limit litigation of claims under § 525(b) to the federal courts in the face of an otherwise valid demand for arbitration. In this regard, Mr. Bradford has not made an allegation that arbitrators acting under the rules of the NYSE are unlikely to enforce § 525(b) as it was intended. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626–28, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 231–34, 107 S.Ct. 2332, 2340–41, 96 L.Ed.2d 185 (1987); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–

27, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991).

The court also need not decide the debtor's claim under § 525(b) in order to administer the bankruptcy case. Mr. Bradford filed a chapter 7 bankruptcy case. If he recovers from J.C. Bradford under § 525(b), the recovery will not be property of the bankruptcy estate because the events that give rise to the claim occurred after Mr. Bradford filed bankruptcy. 11 U.S.C. § 541. The decision of the arbitration panel acting properly under the rules of the NYSE, as hereinafter discussed, can be enforced in any court of competent jurisdiction.

■ The court concludes that the the genesis of this dispute in Bankruptcy Code § 525(b) does not prevent arbitration under the Trainee Agreement. Section 525(b) is not fundamentally different from the other federal statutes barring employment discrimination.

■ Mr. Bradford has not alleged fraud, duress, lack of capacity, or any other ground for holding that he is not bound by the Trainee Agreement. 9 U.S.C. § 2; *American Airlines, Inc. v. Louisville & Jefferson County Air Board*, 269 F.2d 811 (6th Cir. 1959). Thus, the court concludes that it is a valid contract between the parties. Therefore, paragraph 10 [3] of the Trainee Agreement will require the parties to submit this dispute to arbitration if it is a "controversy arising under" the Trainee Agreement.

The arbitration clause applies only to controversies "arising under" the Trainee Agreement. Mr. Bradford alleges that his firing violated Bankruptcy Code § 525(b), not that it specifically breached the Trainee Agreement.[4] Nevertheless, the court is of the opinion this dispute does arise under the Trainee Agreement. A claim that termination of the Trainee Agreement violates federal law is a claim arising under the contract. *Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104 (N.D.Ill.1980); *cf. Gilmer v. In-*

---

**3.** "Any controversy arising under this Agreement shall be submitted to binding arbitration before the New York Stock Exchange, Inc., and be resolved in accordance with the applicable rules then in effect...."

**4.** Paragraph 1 of the Trainee Agreement allows either party to terminate the employment at any time, with or without cause.

terstate/*Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Stokes v. Merrill Lynch, Pierce, Fenner & Smith*, 523 F.2d 433 (6th Cir.1975); *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106 (6th Cir.1985).

■ The court recognizes that "arising under" could be given a more restricted meaning. Under the Federal Arbitration Act, however, the court must interpret an arbitration agreement broadly as to the types of disputes it covers. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225–27, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *McGinnis v. E.F. Hutton & Co.*, 812 F.2d 1011 (6th Cir.1987).

■ Notwithstanding the foregoing, issues still remain as to whether the NYSE will accept this controversy for arbitration and whether it should. The rules of the NYSE may not permit arbitration under the unique circumstances of this case. Although for purposes of this motion, Mr. Bradford is deemed to be an employee of J.C. Bradford, he was never a Registered Representative with the NYSE. J.C. Bradford relies on Rule 600(a)[5] of the NYSE as the basis for compelling arbitration.

Rule 600(a) deals with disputes between members and non-members. Rule 600(a) allows a member to compel arbitration of a dispute with a non-member if:

(1) The non-member and the member have entered into an enforceable written agreement that requires arbitration of that kind of dispute; and

(2) The dispute arose in connection with the member's business.

The court has determined that the Trainee Agreement meets the first requirement. J.C. Bradford contends the dispute meets the second requirement because it arose in connection with J.C. Bradford's business.

Mr. Bradford disagrees. His position is that the business of J.C. Bradford means its business on the New York Stock Exchange. Indeed, Rule 600(a) suggests this result when compared to Rule 347.[6] Rule 347 requires arbitration of employment disputes between members and employees who are Registered Representatives. Rule 347 requires arbitration without regard to whether the employer and employee have a separate written arbitration agreement. A member's right to compel arbitration pursuant to Rule 600(a) of a dispute with a non-member is available only if they have a separate written agreement to arbitrate the dispute, and the dispute arose out of the "member's business".

Rule 600(a) could apply to many kinds of disputes that the NYSE might prefer to exclude from its arbitration process. It could apply to disputes that arise in ordinary business dealings, the kind that are common to almost all businesses and not peculiar to members of the NYSE. Whether Rule 600(a) will have that effect depends on whether NYSE members include arbitration agreements in contracts for supplies, janitorial service, equipment, and other ordinary business needs. Even if Rule 600(a) were *not* intended to cover disputes such as those, it may still apply to this employment dispute between a member and a non-member who has agreed to arbitration.

The reported cases are unclear on this point. Some support Mr. Bradford's argument. *Paine, Webber, Jackson & Curtis,*

---

5. Rule 600(a) provides:

Any dispute, claim or controversy between a customer or non-member and a member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associate person in connection with his activities as an associated person shall be arbitrated under the constitution and Rules of the New York Stock Exchange, Inc., as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member.

6. Rule 347 provides:

Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

*Inc. v. Chase Manhattan Bank,* 728 F.2d 577 (2d Cir.1984); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 742 F.Supp. 1359 (N.D.Ill.1990). Others support a broader interpretation "arising in connection with the business" of the member. *Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826 (D.C.Cir. 1987); *Chisolm v. Kidder, Peabody Asset Management, Inc.,* 810 F.Supp. 479 (S.D.N.Y.1992); *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co.,* 114 A.D.2d 165, 498 N.Y.S.2d 146 (1986). J.C. Bradford hired Mr. Bradford to train as a broker on the NYSE. The NYSE must determine whether it will arbitrate a termination of employment dispute under Rule 600(a) when clearly the dispute may not be arbitrated under Rule 347. Thus, this adversary proceeding should be stayed until such time as the NYSE determines whether it will accept this dispute for arbitration and the arbitration, if accepted, is concluded. *In re Salomon Inc.,* Shareholders' Derivative Litigation, No. 91 Civ. 5500 (RPP), Fed.Sec.L.Rep. p. 98, 454, 1994 WL 533595 *(S.D.N.Y.1994 ).*

### IV.

This Memorandum constitutes findings of fact and conclusions of law as required by FED.R.BANKR.P. 7052. An appropriate order shall be entered.

### ORDER

In accordance with the court's memorandum opinion entered this date:

IT IS ORDERED that this proceeding is stayed to allow defendant, J.C. Bradford & Company, to seek arbitration before the New York Stock Exchange; and

IT IS FURTHER ORDERED that the parties shall file a written report on the status of the request for arbitration or the arbitration proceeding at 90 day intervals from the date of this order.