DEAN WITTER REYNOLDS, INC.,
Robert H. Kremer and Johnny
Ray Turbeville, Petitioners,

v.

Dale S. NESS, Respondent.

Civ. A. No. 3:87–3277–15.

United States District Court,
D. South Carolina,
Columbia Division.

Jan. 13, 1988.

Daryl L. Williams, Sinkler & Boyd, P.A., Columbia, S.C., for petitioners.

John L. Choate, Monteith P. Todd, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., for respondent.

HAMILTON, District Judge.

This is a petition to compel arbitration of a lawsuit currently pending in the Richland County [South Carolina] Court of Common Pleas. 9 U.S.C. § 4. The court has jurisdiction in that the parties are of diverse citizenship. 28 U.S.C. § 1332.

*Background*

*Facts and Procedural History*

Respondent, Dale Ness, was employed at Dean Witter Reynolds', Inc., (hereinafter Dean Witter) Columbia office until September, 1986 when he voluntarily terminated his employment. After leaving Dean Witter, respondent took a job with another securities firm in Columbia. Petitioners allege that after his resignation, respondent repeatedly returned to Dean Witter's office, even after oral and written warnings to stay off the premises. On November 14, 1986, the manager of Dean Witter's Columbia office, Johnny Ray Turbeville, filed a complaint with the Columbia Police Department in which he contended that respondent continued to visit the office after being warned to stay away and refused to leave upon request. On December 22, 1986, respondent allegedly again visited the office, and Turbeville swore out a warrant for his arrest that same day. On December 26, 1986, respondent again returned to Dean Witter's office, where he was arrested for trespass under the warrant taken out on December 22, 1986. Respondent contends that he was there on the twenty-sixth to pick up xerox copies of bonds that belonged to his father. There is no indica-

tion in the record why he was there on the previous occasions.

On June 26, 1987, respondent, in response to his arrest for trespass, filed a complaint in state court in which he asserted causes of action for false arrest and imprisonment, intentional infliction of emotional distress, negligence, defamation, and abuse of process. On July 27, 1987, petitioners removed the action, 28 U.S.C. § 1441, on the basis of diversity of citizenship, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331.

Instead of filing an answer to respondent's state common law tort claims, petitioners asked the court to compel arbitration under § 4 [1] of the Federal Arbitration Act. Petitioners' basis for originally requesting arbitration was contained in the New York Stock Exchange Form U–4 (hereinafter Form U–4), which respondent completed and executed upon commencement of his employment with Dean Witter. That form provides, in pertinent part:

> I agree that any controversy between me and amy member or member organization or affiliate or subsidiary thereof arising out of my employment or termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange, Inc.

This clause of Form U–4 incorporates by reference New York Stock Exchange Rule 347, which provides, in pertinent part:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment

of such registered representative by and with such member or member organization shall be settled by arbitration ...

By order dated November 24, 1987, 677 F.Supp. 861, this court found that it lacked both diversity and federal question jurisdiction and remanded the case back to state court. 28 U.S.C. § 1447(c). Because § 4 of the Federal Arbitration Act clearly requires an independent basis of federal jurisdiction before arbitration can be ordered, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983), the court was powerless at that time to decide whether respondent's state court claims were subject to arbitration under the language of Form U–4.

On December 16, 1987, petitioners filed the present action to compel arbitration of respondent's state court claims. 9 U.S.C. § 4. Because all of the parties to this action are now of diverse citizenship,[2] 28 U.S.C. § 1332, this court has an independent basis of jurisdiction to decide the arbitrability issue presented. *Moses H. Cone*, 460 U.S. at 26 n. 32, 103 S.Ct. at 942 n. 32.

### Legal Analysis

It is undisputed that the portion of Form U–4 quoted above constitutes a valid agreement to arbitrate and is binding on the respondent. The sole issue in this case is whether respondent's state court tort claims "ar[ose] out of ... [his] employment or termination of ... [his] employment" with Dean Witter. Federal courts have recognized two general principles that guide the determination of whether a particular controversy is arbitrable. First, the duty to arbitrate is a contractural obli-

---

**1.** 9 U.S.C. § 4 provides, in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

**2.** In its November 24, 1987, remand order, this court ruled that on the day respondent commenced his state court action, he and one defendant, Johnny Ray Turbeville, were both citizens of South Carolina, which destroyed complete diversity under 28 U.S.C. § 1332. Turbeville's citizenship was a close question because he was actually in the process of moving to Arkansas when respondent served him. On the day the instant petition was filed, Turbeville was indisputably a citizen of Arkansas, which provides this court with diversity jurisdiction. *Id.*

gation. Accordingly, a party is not required to submit to arbitration claims or controversies he has not agreed to arbitrate. *United Steelworkers of America v. Warrior & Gulf Navigation*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Second, when there are "any doubts concerning the scope of arbitrable issues [they] should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941.

■ The United States Supreme Court and the Fourth Circuit Court of Appeals have yet to construe the scope of the phrase "arising out of employment or termination of employment" in a case where a noncommercial tort, such as those asserted by respondent, occurred after the employment relationship had been terminated. Four federal circuit courts, however, have construed this phrase in such a context, and they have established two tests for determining when a dispute arises out of someone's employment or termination of his employment. After applying the facts of this case to both of these tests, the court finds that petitioners are not entitled to arbitration under either test. Furthermore, the court finds that the legal principles and policy considerations underlying this controversy counsel against devising a third, more liberal construction of the phrase "arising out of" that would extend the scope of the arbitration clause in question to the respondent's state court tort claims. Accordingly, the court dismisses the petition for arbitration under the Federal Arbitration Act. 9 U.S.C. §§ 1–14.

The Second Circuit in *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2nd Cir.1983) (split panel) was the first federal circuit court to construe the phrase "arising out of employment or termination of employment" in a case involving noncommercial torts that occurred after the employment relationship had been terminated. In *Coudert*, the plaintiff, an account executive, sued her former brokerage firm for defamation, intentional infliction of emotional distress, and invasion of privacy. Her claims were based upon alleged false statements made by her superiors to coworkers, customers, and securities exchanges and organizations after she terminated her employment with Paine Webber.

The court in *Coudert* began by recognizing that "as to disputes relating to employment, the arbitration provisions survive employment termination even by way of resignation." 705 F.2d at 81 (citing *O'Neel v. National Association of Securities Dealers, Inc.*, 667 F.2d 804, 806–07 (9th Cir. 1982)). The court, however, went on to make it clear that allegations of an employer's tortious conduct, which occurred after termination of employment, do not relate to employment and thus are not arbitrable:

> The complaint plainly alleges that Coudert had voluntarily resigned before the alleged false statements were made to co-workers, customers, and various securities exchanges and organizations, and it is a short road from here to the conclusion that this controversy is not controlled by an arbitration clause that governs only employment or termination.

705 F.2d at 82.

Petitioners clearly are not entitled to an order compelling arbitration under the test adopted in *Coudert*. As in *Coudert*, petitioners' alleged tortious conduct occurred after respondent's resignation.

■ The second and prevailing test for determining when a noncommercial tort, which occurs after termination of the employment relationship, can be said to arise out of someone's employment or termination of employment was set forth by the Eighth Circuit in *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984). Morgan, an account executive for Smith Barney, voluntarily resigned from his position and two years later brought an action alleging: (1) that one of his superiors made defamatory statements to his former customers; (2) that the same superior "scrounge[d] up" complaints from his former customers and communicated them to several securities enforcement organizations; (3) that his superiors falsely informed certain individuals that his broker's license had been suspended; and (4) that one of his superiors told fellow office

workers that he had stolen things from their desks at night.

Like respondent, Morgan had executed Form U–4 at the commencement of his employment, and, based on it, Smith Barney petitioned for an order compelling arbitration of his claims. In determining whether Morgan's claims arose out of his employment or termination of his employment, the court did not consider when the tortious conduct occurred, nor did it treat Morgan's tort claims any differently than it would have claims sounding in contract.[3] Instead, the court evaluated whether Morgan's claims "involve[d] significant aspects of the employment relationship...." *Id.* at 1167. With regard to counts (1), (2), and (3), the court found that Morgan's claims implicated his former customers and that the alleged false statements concerned his job performance and the status of his broker's license. Consequently, Morgan's claims could only be resolved by determining the truth of his former employer's statements. The court ruled that "[t]hese factors reveal a significant relationship between Morgan's claims and his employment at Smith Barney." *Id.* at 1167. Thus, the court found that the first three counts of Morgan's complaint "ar[ose] out of his employment or termination of employment" and were subject to arbitration.

The court, however, found that count (4) of Morgan's complaint, wherein he alleged that his supervisor told his fellow office workers that he stole things from their desks at night, was only tenuously connected with his employment and thus outside the scope of the arbitration clause. According to the court,

> [n]o customers or securities agencies are implicated, and no significant issue of

Morgan's job performance *qua* broker is implicated. At oral argument, counsel for Smith Barney theorized that this claim arose out of Morgan's employment because he must have been attempting to steal customer 'leads' that belonged to other brokers. This is both speculative and insufficient. Thus, we hold that this claim is outside the scope of Rule 347. It must be allowed to proceed to trial following arbitration of the other three counts.

*Id.* at 1168.

The test set forth in *Morgan* is considerably broader than the one adopted by the Second Circuit in *Coudert* and *Downing,* but it still clearly excludes respondent's claims from the scope of the arbitration clause in question. The claims petitioners seek to have arbitrated fail to implicate respondent's customers, any securities agencies, or any significant issue of respondent's performance *qua* broker. As with count (4) of Morgan's complaint, respondent's claims are only tenuously related to his employment or its termination. Thus, they are not subject to arbitration under the approach adopted by the Eighth Circuit.

The *Morgan* approach has been expressly followed by the Sixth Circuit. *Aspero v. Shearson American Express, Inc.,* 768 F.2d 106 (6th Cir.1985), *cert. denied* 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). In *Aspero,* the plaintiff broker, who had executed Form U–4, sued his former brokerage firm for defamation, intentional infliction of emotional distress, and invasion of privacy. The court held that

> [w]hen a party subject to NYSE Rule 347 seeks to compel arbitration of a claim

---

3. *Morgan* criticized *Coudert's* "rigid temporal approach" as in conflict with the language of Form U–4's arbitration clause, *see Merrill Lynch, Pierce, Fenner & Smith v. Hovey,* 726 F.2d 1286, 1290 (8th Cir.1984) (suggesting that *Coudert* interprets phrase "arising out of" as synonymous with "during"), as well as with the strong federal policy favoring arbitration. *Morgan,* 729 F.2d at 1166–67. Notably, a different panel of the Second Circuit in *Downing v. Merrill Lynch, Pierce, Fennell Smith, Inc.,* 725 F.2d 192 (2nd Cir.1984) later explained that the critical element in *Coudert* was not that the dispute occurred after the plaintiff terminated her employment, but that her claims sounded in tort. 725 F.2d at 195. As the Eighth Circuit correctly pointed out, however, "[a]rbitration cannot be made dependent on the simple characterization of a dispute as a tort or contract claim." 729 F.2d 1167 n. 6 (citing *In Re Oil Spill By Amoco Cadiz,* 659 F.2d 789, 794 (7th Cir.1981); *see Prima Paint v. Flood & Conklin,* 388 U.S. 395, 406–07, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967); *Steelworkers,* 363 U.S. at 581, 80 S.Ct. at 1352; *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447, 1449 (9th Cir.1986).

which is brought after the termination of the employment relationship, and which is not based upon a contractual right or duty created by the employment agreement (for example by a severance pay clause or a non-solicitation agreement, which are both intended to operate following termination), the proper question is whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship.

*Id.* at 109. The resolution of respondent's claims will not require an evaluation of his performance as a broker, neither will it require an evaluation of Dean Witter's performance as an employer of brokers. Accordingly, *Aspero* also supports this court's finding that petitioners are not entitled to arbitration under the facts of this case.

In cases almost factually identical to *Morgan* and *Aspero,* the Ninth Circuit in *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447 (9th Cir.1986) (action by former broker against brokerage firm for defamation and false light invasion of privacy) and the New York Court of Appeals in *Flanagan v. Prudential Bache Securities, Inc.,* 67 N.Y.2d 500, 495 N.E.2d 345, 504 N.Y.S.2d 82 (1986) (action by former brokers against brokerage firm for defamation) also expressly adopted the approach set forth in *Morgan. See also Ayres v. Merrill Lynch, Pierce, Fenner & Smith,* 538 F.2d 532, 535 (1976) (NYSE Rule 347 does not require arbitration of retired broker's securities fraud suit against brokerage firm for alleged concealments in sale of broker's own common stock to the employee.); *cf. Cole v. Pathmark of Fairlawn,* 672 F.Supp. 796 (D.N.J. 1987) (employee's claims for false arrest and malicious prosecution did not "arise out of" her termination from employment and, therefore, were not preempted by the Labor Management Relations Act. 29 U.S. C. § 141 *et seq.*).

At oral argument, counsel for petitioners candidly admitted that none of the above authorities construed the phrase "arising out of employment or termination of employment" broadly enough to encompass respondent's tort claims under the facts of this case. Petitioners contend, however, that the strong federal policy favoring arbitration supports such a construction. The court disagrees. As was mentioned earlier, the duty to arbitrate is a contractural obligation, and the federal courts will not compel arbitration of claims that the parties have not agreed to arbitrate. Where, as here, a dispute is only tenuously related to a broker's employment or termination of employment, his execution of Form U–4 cannot reasonably be said to waive his right to a judicial trial of his claim(s). If the court were to construe Form U–4's arbitration clause broadly enough to encompass respondent's tort claims, the court's holding would sanction arbitration of virtually any dispute between a securities firm and its former brokers who executed Form U–4. The court finds that the federal policy favoring arbitration does not compel such a broad reading of the phrase "arising out of." On the contrary, the court agrees with the Eighth, Sixth, and Ninth Circuits that the phrase "arising out of employment or termination of employment" requires arbitration of disputes, both tort and contract, which "involve *significant* aspects of the employment relationship." *Morgan,* 729 F.2d at 1167. (Emphasis added).

Based on the foregoing reasoning and cited authorities, the court finds that petitioners are not entitled to an order compelling arbitration of respondent's state court tort claims. Accordingly, the instant petition is dismissed.