**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES ZANDFORD,
Plaintiff-Appellant,

v.

PRUDENTIAL-BACHE SECURITIES,

No. 94-1360

INCORPORATED; JOHN P. GRANER, in
his individual and representative
capacities,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-90-2568-HAR)

Argued: December 4, 1996

Decided: April 30, 1997

Before WIDENER and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Phillips wrote the opinion, in which Judge Widener and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Neal Lawrence Walters, Supervising Attorney, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Mahlon M. Frankhauser,

KIRKPATRICK & LOCKHART, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Tristan B.L. Siegel, Third Year Law Student, Kevin M. Haley, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Stephen G. Topetzes, KIRKPATRICK & LOCKHART, L.L.P., Washington, D.C., for Appellees.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Charles Zandford appeals an order of the district court confirming an arbitration award against him on claims he made against his former securities dealer employer, Prudential-Bache Securities, Inc. (Pru-Bache). He claims that the court erroneously compelled arbitration of disputes that he was not contractually bound to arbitrate. We affirm.

I

Zandford began work as an account executive for Pru-Bache in May 1983. As a condition of his employment with Pru-Bache, Zandford filed a "Form U-4, Uniform Application for Securities Industry Registration," which both he and an agent for Pru-Bache signed. The U-4 contract was between Zandford and the National Association of Securities Dealers (NASD) and the securities exchanges, and not between Zandford and Pru-Bache. The U-4 form required Zandford to arbitrate "any dispute, claim or controversy" that might arise between him and his employer under the various rules and bylaws of the NASD and the New York Stock Exchange (NYSE). J.A. 31-34. Among those rules covered in the U-4 form was NYSE Rule 347, which provides, "Any controversy between a registered representative and any member . . . arising out of the employment or termination of employment of such registered representative by and with such . . . member organization shall be settled by arbitration, at the instance of either party . . . ." J.A. 87. Similarly, Zandford's separate employment contract with Pru-Bache required him to arbitrate "[a]ny claim or controversy arising out of or respecting any matter contained in this Agreement . . . ." J.A. 110.

2

On March 15, 1984, Pru-Bache terminated Zandford because of alleged irregularities in Zandford's customers' accounts and because of Zandford's alleged failure to comply with Pru-Bache's internal policies. At the heart of these allegations was Pru-Bache's claim that Zandford had placed his personal funds into his clients' accounts to cover margin calls, a practice Pru-Bache's rules did not permit. Pru-Bache then initiated an arbitration proceeding against Zandford to recover the proceeds of a loan it had made to him. Zandford responded by filing counterclaims for wrongful termination, abusive discharge and libel. In late 1986, the parties settled their dispute and agreed to dismiss with prejudice all of their claims pursuant to a settlement agreement. In this agreement, Pru-Bache promised to amend its termination form to explain that Zandford had deposited the funds into his clients' accounts at the clients' direction, and that Zandford had acted with the "knowledge and assistance" of Pru-Bache's operations personnel. J.A. 39. Both parties also agreed not to "divulge or discuss . . . the facts or circumstances underlying this settlement except otherwise (sic) required by law." J.A. 40. Pru-Bache also agreed to pay Zandford $20,000 and to "release, discharge and acquit Zandford . . . from all claims, demands, sums of money, causes of action, obligations and liabilities of any kind or nature whatsoever which [Pru-Bache] may have had or hereafter[may] assert to have which arise out of or are in any manner whatsoever, directly or indirectly related to Zandford's employment . . . ." J.A. 39.

Pru-Bache amended the termination form that it filed with the NASD as it had promised to do in the settlement agreement. Later, however, the NASD commenced a disciplinary proceeding against Zandford alleging that he made unsuitable recommendations to his clients, engaged in excessive trading, and made improper deposits into clients' accounts while he was employed by Pru-Bache. Appellee John P. Graner, Pru-Bache's regional manager while Zandford was employed there, testified against Zandford at the NASD proceeding in October 1988.

Zandford then brought this action in the United States District Court for the District of Maryland against Pru-Bache and Graner alleging breach of the settlement agreement, intentional interference with business relationships, and intentional infliction of emotional

3

distress.[1] Pru-Bache moved the district court to stay the proceeding and to compel arbitration before the NYSE based on the arbitration clause contained in the U-4 form. The district court granted the motion and denied Zandford's subsequent motion for reconsideration. Zandford noticed an appeal to this court, but the appeal was dismissed as interlocutory. Zandford then participated in the NYSE arbitration, presenting the same three claims as in his complaint. The arbitration panel dismissed Zandford's claims and required Zandford to pay one-half of the forum fees. Zandford then filed a motion to vacate the arbitration award in the district court, contending that the arbitration panel erred in refusing to hear certain testimony and in being partial to Pru-Bache. Instead, the district court granted Pru-Bache's motion to confirm the arbitration award. This appeal followed.

II

Zandford challenges the district court's order confirming the arbitration award on the basis that arbitration should not have been compelled. He seeks reversal of the order and a remand to the district court for trial of his claims on the merits. We review the district court's orders de novo. See First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1926 (1995); Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 145 (4th Cir. 1993).

Zandford advances two basic reasons why the district court erred in compelling arbitration of his claims: (1) the arbitration clauses in the employment contract and the U-4 registration form did not survive when the settlement agreement superseded the employment contract, and (2) the disputes at issue did not arise out of Zandford's employment so are not arbitrable in any event. We take these contentions in order.

A.

The settlement agreement released Zandford from "all . . . obligations and liabilities of any kind or nature whatsoever . . . which arise out of or are in any manner whatsoever, directly or indirectly related

_____

[1] Graner died in January 1994. No person or other entity has since been substituted for Graner.

4

to Zandford's employment and termination of employment with [Pru-Bache]." Zandford says this released him from any obligation to arbitrate under either the U-4 form or the employment agreement; Pru-Bache says the obligation under the U-4 filing survived and remained binding. We agree with Pru-Bache.

We start with the federal policy strongly favoring arbitration, under which "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). When a party seeking to avoid arbitration contends that the clause providing for arbitration has been superseded by some other agreement, "the presumptions favoring arbitrability must be negated expressly or by clear implication." Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union, 430 U.S. 243, 255 (1977). Motions to compel arbitration under an arbitration clause should not be denied "`unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

There are, however, countervailing considerations to be taken into account. Arbitration clauses are contractual terms, and ordinary means of contract interpretation must be applied to determine their applicability to particular disputes. Arbitration may only be judicially compelled when the parties have agreed to it, and then only for those kinds of disputes that the parties have agreed to submit to arbitration. See General Drivers, Warehousemen and Helpers Local Union No. 509 v. Ethyl Corp., 68 F.3d 80, 83 (4th Cir. 1995). "[T]he basic objective . . . is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, `are enforced according to their terms.'" First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1925 (1995) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1214 (1995)) (internal citations omitted). And, when

5

an arbitration clause is invoked after the contractual relationship between the parties has ended, the parties' intent governs whether the clause's authority extends beyond the termination of the contract. See Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 119 (4th Cir. 1993).

The settlement agreement between Pru-Bache and Zandford does not purport to provide any exceptions to Zandford's general release from all obligations that are directly or indirectly related to his employment with Pru-Bache. "[T]he very nature of a general release is that the parties desire to settle all matters forever. A general release . . . not only settles enumerated specific differences, but claims `of every kind or character, known and unknown.'" Virginia Impression Prods. Co., Inc. v. SCM Corp., 448 F.2d 262, 265 (4th Cir. 1971).

It is, therefore, apparent from the wording of the release executed in 1986 that Pru-Bache and Zandford intended their employment contract to be no longer the source of any requirement or liability. Based on the language of the release and the intent of the parties that it evinces, it is clear and indeed not disputed that Zandford cannot be called upon to arbitrate any matter on the authority of the arbitration clause included in the employment agreement.

The obligation assumed by Zandford in the U-4 filing, however, is a different matter. As indicated, the U-4 form that Zandford signed and filed included an agreement "to arbitrate any dispute, claim or controversy . . . that is required to be arbitrated under the rules . . . of the organizations with which [he] register[ed] . . . ." J.A. 34. By contemporaneously registering with the NYSE, he therefore submitted to NYSE Rule 347, which provides for arbitration of "[a]ny controversy . . . arising out of the employment or termination of employment . . . at the instance of either party." J.A. 87. Though such agreements are with securities exchanges rather than with individual employers, they are enforceable by employer members of the exchanges without regard to whether their employment agreements also contain arbitration clauses. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 n.2 (1991) (so holding); Williams v. Cigna Fin. Advisers, Inc., 56 F.3d 656, 660 (5th Cir. 1995) (same); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 312 (6th Cir. 1991) (same). Zandford does not contest that proposition, but con-

6

tends that his obligations under the U-4 form expired with the execution of the general release along with his obligations under his employment contract, because his application to become a registered representative was related to his employment with Pru-Bache. We disagree.

Critically, the settlement agreement did not purport to "negate[ ] expressly or by clear implication" the arbitration obligations invoked by the U-4 form, hence the presumptions favoring arbitration deriving from those provisions. See Nolde Bros., 430 U.S. at 255. Furthermore, Pru-Bache had no power by contract to release Zandford from the arbitration obligations assumed in his U-4 form which ran to the NYSE and the NASD. See Thomas James Assocs., Inc. v. Jameson, 102 F.3d 60, 66 (2d Cir. 1996) (voiding a clause in an employment contract between an employer and employee, both members of the NASD, purporting to waive the NASD's arbitration provisions because "it would be inappropriate" for courts to enforce a waiver when a self-regulatory association of securities firms ordains that such waivers not be included in employment contracts). As Zandford concedes, see Appellee's Br. Exh. 3 (ltr. concession), he remained a member of the securities exchanges and subject to their requirements when the events leading to this lawsuit occurred. Among those requirements was compliance with the obligation he assumed in filing the U-4 form to arbitrate those disputes enumerated in that form. See O'Donnell v. First Investors Corp., 872 F. Supp. 1274, 1277 (S.D.N.Y. 1995) (enforcing arbitration clause contained in U-4 form even though another employment agreement superseded contract that related to the U-4 form).

B.

That leads to the question whether the disputes at issue did fall within that set of disputes subject to arbitration under the U-4 filing. As indicated, the U-4 form requires registered representatives to arbitrate disputes according to the rules established by the various exchanges and organizations, and NYSE Rule 347 declares that disputes "arising out of . . . employment or termination of employment" are subject to arbitration. J.A. 87. Zandford contends that the disputes at issue concern only Pru-Bache's alleged breach of the settlement agreement and therefore do not "arise out of" his employment or his

7

termination in any but the most attenuated manner. Pru-Bache responds that the disputes are directly related to his record as a securities dealer when he was employed by Pru-Bache and therefore the disputes do arise out of his employment or the termination of his employment. Again, we agree with Pru-Bache.

Though this court has not before addressed the specific interpretive issue, see Dean Witter Reynolds, Inc. v. Ness , 677 F. Supp. 866, 868 (D.S.C. 1988), the courts of appeals that have done so in interpreting Rule 347's "arising out of employment" language have followed the Eighth Circuit in construing the phrase to include claims that "involve significant aspects of the employment relationship, including but not limited to explicit contractual terms." Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163, 1167 (8th Cir. 1984); see Fleck v. E.F. Hutton Group, Inc., 891 F.2d 1047, 1052 (2d Cir. 1989); Zolezzi v. Dean Witter Reynolds, Inc., 789 F.2d 1447, 1450 (9th Cir. 1986); Aspero v. Shearson American Express, Inc., 768 F.2d 106, 109 (6th Cir. 1985); cf. Pearce v. E.F. Hutton Group, Inc., 828 F.2d 826, 832-33 (D.C. Cir. 1987) (applying Morgan to define scope of phrase "arising out of" employment with regard to an arbitration clause in another form contract).

As Morgan pointed out, the Rule 347 language, "reveals that the specific source from which a controversy must arise is not the employment (or termination of the employment) contract; it is simply employment or termination of employment." Morgan, 729 F.2d at 1167 (emphasis in original). Neither party contends that this prevailing formulation of the "arising out of employment" test as derived from Morgan is inappropriate as an interpretive guide, and we take this opportunity to adopt it.

In applying Morgan's "significant aspects" test, some courts have elaborated that "the proper question is whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship." Aspero, 768 F.2d at 109; Fleck, 891 F.2d at 1053 (citing Aspero). On this basis, non-contractual tort claims for wrongful termination and post-termination defamation respecting an employee's job performance have been held arbitrable under Rule 347 because they necessarily involve an evaluation of the employer's or the employee's

8

performance during their employment relationship. See Fleck, supra; Zolezzi, supra, Aspero, supra; Morgan, supra. On the other hand, post-termination disputes whose resolution will require no such evaluation of the former employer-employee relationship have been found not arbitrable under Rule 347. See Dean Witter Reynolds, Inc. v. Ness, 677 F. Supp. 866, 870 (D.S.C. 1988) (holding disputes arising from former employee's claims of false arrest and imprisonment following his arrest for unauthorized entry into former employer's office not arbitrable under Rule 347); see also Morgan , 729 F.2d at 1168 (holding that former employee's defamation claim against former employer for latter's assertions of petty theft from other employees' work desks was not arbitrable because "no significant issue of [the employee's] job performance qua broker is implicated").

The disputes in issue here are those defined by the three claims alleged in Zandford's complaint that were ordered to arbitration. These were: (1) a claim seeking rescission of the settlement agreement and release for failure of consideration and material breach; (2) a claim seeking damages for intentional interference with business relationships; and (3) a claim seeking damages for intentional infliction of emotional distress. J.A. 13-16.

Applying the Morgan "significant aspects" test, which identifies the source from which arbitrable disputes arise under Rule 347 as "not the employment (or termination of the employment) contract" but "simply employment or termination of employment," Morgan 729 F.2d at 1167 (emphasis in original), we conclude that all three claims meet the test, hence are arbitrable.

The two tort claims--for intentional interference with business relationships and intentional infliction of emotional distress--easily meet that test. Zandford argues that their common source is the settlement agreement and hence not either his preexisting employment by Pru-Bache or its termination. Specifically, the contention seems to be that because both alleged torts would, if proven, also involve breaches of the settlement agreement's obligations of non-disclosure, it is that agreement out of which these two tort-based disputes arise. But, this is completely belied by the factual basis of these tort claims as pleaded, hence defined for arbitrability purposes, in Zandford's complaint.

9

As pleaded, the gist of the intentional interference claim was that by falsely and recklessly representing to persons in the securities business that while employed by Pru-Bache, Zandford had engaged in conduct violative of securities industry regulations, Pru-Bache had "maliciously" interfered with his "business relationships." J.A. 13-14. A critical issue in resolving that dispute is the truth of any such representations made about Zandford's conduct as a broker while employed by Pru-Bache. See Morgan, 729 F.2d at 1167 (pointing out that "[a] primary issue" in resolving a comparable post-termination, employment related slander claim would be "the truth of the statements"). The fact that, even if true, the representations might nevertheless involve violation of the settlement agreement is completely irrelevant to the tort-claim dispute, and certainly does not make that agreement the true source of the dispute.

Similarly, the gist of the emotional distress claim as pleaded is Pru-Bache's alleged post-termination conduct in "unjustly and wrongfully accusing Zandford of engaging in criminal activity" involving his employment as a broker by Pru-Bache. J.A. 15. Again, the truth of any "accusations" made about Zandford's conduct as a broker is a critical issue in resolving that tort-claim dispute. And, again, the connection that the accusations might have to breach of the settlement agreement could not make that agreement, rather than the employment relationship, the source of the dispute. Hence, that claim also was clearly arbitrable under Rule 347.

Zandford's breach of contract claim seeking (for reasons not readily apparent to us)[2] rescission of the settlement agreement and mutual release presents a closer issue, but we conclude that it too was properly found arbitrable by the district court. Zandford argues that the gist of this claim is simply breach of the settlement agreement, and

_____

[2] The consequences of rescission would presumably include an obligation to make restitution of the $20,000 paid Zandford; re-opening of any claims by Pru-Bache against Zandford that are not time-barred; and removal of any obligations imposed upon Pru-Bache respecting disclosure of Zandford's employment conduct. When asked at oral argument if Zandford was aware of those apparent consequences, counsel for Zandford professed awareness, but willingness--for reasons not proffered--to accept them.

that its resolution does not require any inquiry into his performance as a broker while employed by Pru-Bache. A closer look at the full range of the claim, however, reveals a closer relationship to his earlier Pru-Bache employment. A critical aspect of the claim involves Graner's testimony at the NASD disciplinary proceeding against Zandford, which is alleged to have constituted a material breach warranting rescission. That testimony of course directly concerned Zandford's performance as a broker while employed by Pru-Bache. Inevitably, Pru-Bache's justification defense for the giving of this testimony--that it was legally compelled, hence not a violation of the agreement, see J.A. 40--must involve inquiry into the nature of the testimony, hence of the details of Zandford's performance while with Pru-Bache.

That this connection between the breach of contract claim and Zandford's pre-termination job performance is attenuated suffices at most to make Rule 347's coverage doubtful. It is not so palpable as plainly to exclude coverage. Cf. Ness , 677 F. Supp. at 870 (unrelated post-termination tort claim not attributable). We are, as indicated, required to resolve doubts concerning the scope of arbitrability in favor of arbitration, Moses H. Cone Mem'l Hosp. , 460 U.S. at 24-25, and to deny a claimed right to arbitration only when we have "positive assurance" that the clause relied upon "is not susceptible of an interpretation that covers the asserted dispute," United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Applying those mandates to what is at most a doubtful question of coverage, we resolve it in favor of arbitration as to this claim as well as the two tort-based claims.

AFFIRMED

11