Wilbur K. HAMMAKER, Plaintiff,

v.

BROWN & BROWN, INC., Defendant.

No. Civ.A. 201CV962.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 22, 2002.

Brandon Harvey Zeigler, Stallings & Richardson, P.C., Judith M. Colfield, Judith M. Cofield, P.C., Kellam Thomas Parks, Stallings and Richardson PC, Virginia Beach, VA, for Plaintiff.

Thomas Michael Lucas, McGuireWoods LLP, Kristina H. Vaquera, Troutman Sanders LLP, for Defendant.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter is before the Court upon defendant Brown & Brown, Inc.'s Motion to Strike Jury Demand. Having considered the parties pleadings, this matter is now ripe for judicial determination without the need of a hearing.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Wilbur K. Hammaker filed the instant action against Brown & Brown, Inc., ("Brown") and Riedman Corporation ("Reidman")[1] on December 30, 2001, alleging wrongful termination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1994 & Supp. IV 1999). Hammaker was employed with Reidman as General Manager until Reidman sold its insurance-related operations to Brown on January 1, 2001. Ham-

---

1. Reidman was dismissed from this action on March 11, 2002, by agreement of counsel.

maker then signed an Employment Agreement with Brown. On April 13, 2001, Brown terminated Hammaker's employment. Hammaker was seventy-three (73) years old at the time.

Hammaker alleges that up until his termination, Brown tried to force him to retire and to turn over his clients and accounts to younger members of the office. Brown allegedly reduced Hammaker's salary without just cause, despite the allegation that Hammaker worked longer hours and generated more business than most employees. Hammaker seeks back pay, pecuniary losses, and liquidated damages pursuant to 29 U.S.C. § 626(b), and reasonable attorney fees and costs.

Brown filed its Answer on January 24, 2002. On January 24, 2002, Brown also filed its motion to strike Hammaker's jury demand and its supporting memorandum of law. On March 8, 2002, Hammaker filed its brief in opposition to Brown's motion to strike. On March 13, 2002, Brown filed its reply brief.

## II. DISCUSSION

Brown moves to strike Hammaker's jury demand on the grounds that he waived his right to a jury trial by signing the Employment Agreement. Section 16 of the Employment Agreement provides "[e]mployee and Company hereby knowingly, voluntarily and intentionally waive any right either may have to a trial by jury with respect to any litigation related to or arising out of, under or in conjunction with this Agreement." Brown contends that by executing the Employment Agreement, Hammaker waived his right to a jury trial. Hammaker argues that the waiver is not valid on two grounds. First, he argues that the Employment Agreement does not contemplate an ADEA action, and thus does not

restrict Hammaker's right to a jury trial in this case. Second, the waiver does not conform to the requirements of the ADEA as amended by the Older Worker Benefits Protection Act of 1990 ("OWBPA"), Pub.L. No. 101–433, 104 Stat. 978 (1990) (amending 29 U.S.C. §§ 621, 623, 626, 630), and is thus unenforceable. In rebuttal, Brown does not address the applicability of the waiver to this case, but rather only argues that the waiver requirements of the OWBPA is inapplicable to procedural rights, including the right to a judicial forum.

## A. The Waiver Provision Contemplates the ADEA claim.

 As an initial matter, the Court must determine whether Hammaker's ADEA claim falls within the scope of the jury waiver provision. To do so, the Court must construe the terms of the Employment Agreement applying Florida state law.[2] Under Florida rules of construction, the Employment Agreement must be construed against its drafter, Brown. *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 641 (Fla.1999). "In interpreting a contract, [a]ll the various provisions must be so construed, if it can reasonably be done, as to give effect to each. Looking to the other provisions of a contract and to its general scope, if one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability." *World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So.2d 410, 412 (Fla. 3d DCA 2001) (internal citation omitted).

Hammaker brought this action seeking redress for wrongful termination of his employment with Brown for age discrimination. The parties' former employment relationship derived from the Employment

---

**2.** Section 18 of the Employment Agreement provides that Florida law governs.

Agreement. Although Hammaker's claim is statutory, Hammaker's employment had its "origin or genesis in the [employment] contract." *See Royal Caribbean Cruises, Ltd. v. Universal Employment Agency,* 664 So.2d 1107, 1108 (Fla. 3d DCA 1995) (quoting *Sweet Dreams Unlimited v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 642 (7th Cir.1993)) (interpreting hiring contract to contemplate tort claims where it concerns letters of employment that were indispensable to the operation of the agreement between the parties). As such, the instant dispute can be said to "arise out of" or "relate to" the Employment Agreement within the meaning of the waiver provision. *Id.*

In making this determination, the Court reviewed numerous cases that interpret the relevant terms of the instant waiver provision. Although these cases generally address the scope of a mandatory arbitration agreement, the Court finds the analysis particularly instructive. For example, in *Chase Manhattan Inv. Servs., Inc. v. Miranda,* 658 So.2d 181 (Fla. 3d DCA 1995), the court construed an employment agreement broadly to encompass tort claims. In that case, the relevant provision provided that "any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s)" shall be subject to arbitration. In construing the term "arising out of," the court held that even without bias from the strong policy for arbitration, the tort claims were contemplated by the arbitration provision, reasoning that the challenged actions would not have occurred but for the employer-employee relationship. *Id.* at 182; *see also Prudential Securities, Inc. v. Katz,* 807 So.2d 173, 174 (Fla. 3d DCA 2002) (holding Florida whistle blower claim relates to plaintiff's employment or termination such that arbitra-

tion clause covers it); *Sweet Dreams,* 1 F.3d at 639; *American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 93 (4th Cir.1996) (construing the terms "arise out of or relating to" broadly to be capable of an expansive reach). In this case, Hammaker's ADEA claim would not exist but for the employer-employee relationship with Brown. Thus, the Court finds that the Employment Agreement contemplates Hammaker's ADEA claim.

## B. The Waiver Provision Does Not Conform to the OWBPA.

██ Having determined that the waiver provision contemplates the instant ADEA claim, the Court must now determine whether the waiver provision is enforceable. Brown argues that the waiver provision is valid because it is not subject to the requirements imposed by the OWBPA as Hammaker contends on the grounds that the OWBPA applies only to the waiver of substantive rights as opposed to procedural rights such as the right to a judicial forum.

██ It is well settled that the ADEA confers the right to a jury trial. 29 U.S.C. § 626(c)(2); *Lorillard v. Pons,* 434 U.S. 575, 582–83, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Slatin v. Stanford Research Inst.,* 590 F.2d 1292, 1293 (4th Cir.1979). The right to a jury trial is a procedural right. *See Adams v. Aiken,* 41 F.3d 175, 177–78 (4th Cir.1994) (noting that a jury verdict is a procedural right); *Jones Motor Co., Inc. v. Holtkamp, Liese, Beckemeier & Childress, P.C.,* 197 F.3d 1190, 1192 (7th Cir. 1999) (referring to a jury trial as a procedural advantage). Rights conferred under the ADEA may not be waived absent compliance with the procedures set forth in the OWBPA. 29 U.S.C. § 626(f)(1). The OWBPA provides that "[a]n individual may not waive any right or claim under this

chapter unless the waiver is knowing and voluntary." *Id.* A waiver is not knowing and voluntary unless, at a minimum, certain enumerated requirements are met, including that the waiver refers specifically to the ADEA, the individual is advised to consult with an attorney, and that there is a seven-day revocation period. *Id.* It is undisputed that the waiver provision at issue in this case does not conform to the requirements imposed by the OWBPA.

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has not directly addressed the issue now before the Court. In arguing that the OWB-PA does not apply to the waiver provision in this case, Brown relies upon cases in which other United States Courts of Appeal have held the OWBPA inapplicable to waivers of a judicial forum on the premise that Congress intended the waiver requirements to apply only to substantive rights. *See, e.g., Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 660–61 (5th Cir.1995) (holding the OWBPA protects against waiver of a right or claim, not against the waiver of a judicial forum, reasoning that there is no clear indication that Congress was concerned with protecting procedural rights in addition to substantive rights);[3] *Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 181–82 (3d Cir. 1998) (holding the OWBPA applies only to substantive rights under the ADEA and that the statute does not reflect congressional intent to except predispute agreements to arbitrate ADEA claims); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 13–14 (1st Cir.

1999) (holding Congress did not intend to preclude predispute arbitration agreements when it enacted the OWBPA).

These cases, however, are distinguishable for the following reasons. First, in *Williams, Seus,* and *Rosenberg,* the Fifth, Third and First Circuits, respectively, address the enforceability of arbitration agreements wherein employees waived their rights to a judicial forum altogether. In this case, Hammaker's ADEA claim will be heard in a judicial forum, whether by a bench trial or jury trial.

Second, these cases rely heavily upon the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the Supreme Court held that arbitration agreements were enforceable as to ADEA claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2000). In dicta, the Supreme Court stated that Congress did not explicitly preclude arbitration or other nonjudicial resolution of claims, even in its amendments to the ADEA, referring to the OWBPA. The Court further stated that a Congressional intent to afford substantive protection to the waiver of a judicial forum would be deducible from text or legislative history. *Id.* at 29, 111 S.Ct. 1647. It is this dicta to which the Fifth, Third and First Circuits principally rely. This reliance, however, is misplaced. Although the Supreme Court acknowledges the amendments, *Gilmer* does not directly consider the effect of the OWBPA to procedural rights because the contract in that case was executed prior to the OWBPA's effective date.[4] Moreover,

---

**3.** In its reply brief, Brown notes that the Fourth Circuit cites to *Williams* for authority in *Zandford v. Prudential–Bache Sec., Inc.,* 112 F.3d 723 (1997). However, the Fourth Circuit does so for the proposition that arbitration agreements with employer members of securities exchanges are enforceable. The *Zandford* court does not directly address the

issue of whether the OWBPA applies to procedural rights conferred by the ADEA. Thus, *Zandford* lends no support to Brown's argument.

**4.** The OWBPA applies to waivers executed on or after October 16, 1990. OWBPA § 202(a) (reprinted in note to 29 U.S.C. § 626). As in

the proposition that Congress did not explicitly preclude non-judicial resolution of ADEA claims in the OWBPA is not subject to contravention by a finding that the OWBPA applies to waivers of procedural rights; the imposition of stringent requirements does not necessarily amount to outright preclusion.

■ Thus, the Court respectfully declines to follow the reasoning of the *Williams, Seus,* and *Rosenberg* courts, and will instead employ the tools of statutory construction as set forth by the Fourth Circuit to determine whether the waiver requirements imposed by the OWBPA applies to both procedural and substantive rights. In making this determination, the Court must first ascertain whether the language of the statute is plain and unambiguous. *United States v. Photogrammetric Serv. Inc.,* 259 F.3d 229, 247 (4th Cir. 2001) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). If the language of the statute is plain and unambiguous, the Court's inquiry must cease. *Scrimgeour v. Internal Revenue,* 149 F.3d 318, 327 (4th Cir.1998). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson,* 519 U.S. at 341, 117 S.Ct. 843. "Words that are not defined within the statute are accorded their plain and ordinary meaning." *Scrimgeour,* 149 F.3d at 327. The Court may look beyond the language of the statute to the legislative history for guidance only if the statutory language is ambiguous. *Photogrammetric,* 259 F.3d at 247 (quoting *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 603 (4th Cir.1999)).

In applying these rules of statutory construction to § 626(f)(1), the Court finds that the language of the statute is plain and unambiguous. The waiver requirements apply to "*any* right or claim under this chapter...." § 626(f)(1). The term "any" is defined as "one or more." Webster's Third New Int'l Dictionary (1993). Thus, the term "any" is subject to a broad interpretation, and should be read to apply to all rights conferred by the ADEA, including the right to a jury trial.

■ Construing the terms "any right" to encompass all rights under the ADEA, including procedural rights, is consistent with Congress' use of the term "any" throughout the chapter. For instance, the statute provides that "[a]ny person aggrieved may bring a civil action...." § 626(c)(1). The right to bring a civil action is conferred upon all persons. The only qualification is that the person be "aggrieved" under the statute. Thus, the term "any" is used broadly in that provision. Where words that have a well-known meaning at common law are employed in a statute, they are presumed to have been used in that sense. *Scrimgeour,* 149 F.3d at 327. It would be inconsistent to construe "any" narrowly as to the waiver requirements, yet broadly as to other provisions in the same chapter.

Moreover, interpreting the statute broadly to apply to the right to a jury trial is consistent with the OWBPA's purpose to protect the rights and benefits of older workers. Indeed, "[t]he OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers." *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). The statute does not impose any

*Gilmer,* the OWBPA was inapplicable to the waiver in *Seus* because it was executed prior to the amendments' enactment.

qualifiers upon the applicability of the waiver requirements except that it be applied to rights conferred under the statute. If Congress wanted the protections of the OWBPA to apply only to substantive rights, Congress could have adopted language that clearly conveyed such an intent. It is not within the province of this Court to render the phrase "any right or claim under this chapter" superfluous. *Virginia v. Browner,* 80 F.3d 869, 876 (4th Cir.1996) ("A court should not—and we will not—construe a statute in a manner that reduces some of its terms to mere surplusage"). Thus, the plain meaning of the statute requires that waivers of any statutory right, including the right to a jury trial, must conform to the OWBPA to be enforceable. *Thiele v. Merrill Lynch, Pierce, Fenner & Smith,* 59 F.Supp.2d 1060, 1064 (S.D.Ca.1999). Because the waiver in this case does not conform to the OWBPA, it is not knowing and voluntary as defined by § 626(f)(1) and is thus unenforceable.

### III. CONCLUSION

For the foregoing reasons, Brown's Motion to Strike Jury Demand is hereby **DENIED.**

The Clerk of the Court is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the parties.

IT IS SO **ORDERED.**