James **WEBB**, Plaintiff,

v.

Joe **HARRIS**, Full Spectrum Lending, Inc., and Countrywide Financial Corp., Defendants.

No. 1:04 CV 00812.

United States District Court, M.D. North Carolina.

April 1, 2005.

David Fothergill, Kevin Bradley Cartledge, Wilson & Iseman, L.L.P., Winston–Salem, NC, for Plaintiff.

Amy C. Reeder, Hamlin Landis Wade, Jr., Helms, Mulliss & Wicker, P.L.L.C, Charlotte, NC, for Defendants.

### JUDGMENT

OSTEEN, District Judge.

On February 8, 2005, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636(b). No objections were received by the court within the time prescribed by the statute.

The court hereby adopts the Magistrate Judge's Recommendation.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendants' motion to compel arbitration of all of Plaintiff's claims in this matter and motion to dismiss this action pending arbitration [Pleading No. 6] be **GRANTED**, and this action be, and is hereby, dismissed.

---

1. Plaintiff Webb voluntarily dismissed without prejudice all claims against Defendant Countrywide Financial Corp. on September 10, 2004.

SHARP, United States Magistrate Judge.

### *RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

This matter is before the Court on the motion of Defendants Joe Harris and Full Spectrum Lending, Inc. ("Full Spectrum")[1] to compel arbitration of all of Plaintiff James Webb's claims in the instant action and to dismiss or stay the action pending arbitration. (Pleading No. 6.) Plaintiff Webb responded in opposition to Defendants' motion, and Defendants filed a reply. The parties were heard in oral argument on the motion on January 31, 2005. The motion is ready for a ruling.

### I. Procedural History

Plaintiff Webb filed suit against Defendants in the Superior Court of Forsyth County, North Carolina on August 6, 2004, alleging claims of slander, libel, fraudulent misrepresentation, negligent misrepresentation, and unfair and deceptive trade practices pursuant to N.C. Gen.Stat. § 75.1–1, *et seq.* Defendants removed the case to this Court and filed an answer denying the material allegations in the complaint and asserting various affirmative defenses. On October 13, 2004, Defendants filed the instant motion to compel arbitration and motion to dismiss, or in the alternative stay, pending arbitration.

### II. Facts

Plaintiff began work as the Branch Manager for Full Spectrum's Norfolk, Virginia branch on July 10, 2002. (Pleading No. 8, Lana Ceco[2] Aff. ¶ 3.) At the time of his hiring, Plaintiff was given an application

---

2. Lana Ceco serves as the Manager of Human Resources, Compliance Operations, for Full Spectrum. (Ceco Aff. ¶ 1.)

packet that included a Mutual Agreement to Arbitrate Claims, which he signed on July 2, 2002 ("2002 Arbitration Agreement"). *Id.* ¶ 4, Ex. A. The 2002 Arbitration Agreement provides, in pertinent part, as follows:

> *Agreement to Arbitrate; Designated Claims* .... Except as otherwise provided in this Agreement, the Company and the Employee hereby consent to the resolution by arbitration of all claims or controversies for which a federal or state court or other dispute resolution body otherwise would be authorized to grant relief, *whether or not arising out of, relating to or associated with the Employee's employment with the Company, or its termination, including, but not limited to, any claims or controversies arising out of, relating to or associated with the Employee's application for employment and the Company's hiring of the Employee,* that the Employee may have against the Company or that the Company may have against the employee. The Claims covered by this Agreement include, but are not limited to, ... tort claims ...

*Id.,* Ex. A (emphasis added).

On October 1, 2002, Full Spectrum opened a Charlotte, North Carolina branch, and Plaintiff transferred to Charlotte to become the Branch Manager. *Id.* ¶ 5. Full Spectrum hired Defendant Joe Harris to replace Plaintiff as Branch Manager of the Norfolk branch. (Pleading No. 1, Compl. ¶ 10.) Plaintiff resigned from his position in Charlotte on April 1, 2003. (Ceco Aff. ¶ 5.) Plaintiff alleges that in both Norfolk and Charlotte, he met or exceeded all of the expectations of his employment and was an "exemplary employee." (Compl. ¶¶ 8, 11.)

In September 2003, Plaintiff interviewed for a position with America's Money Line, Inc. ("AML"). *Id.* ¶ 14. Plaintiff claims that as part of AML's candidate screening process, AML contacted a former AML employee, Theresa Dahland, who had also once worked for Full Spectrum. *Id.* ¶ 17. AML allegedly asked Dahland for her opinion about Plaintiff's work performance and professional reputation. *Id.* Dahland, who did not know Plaintiff, allegedly called Defendant Harris, whom she knew from her time with Full Spectrum, and inquired about Plaintiff's work performance. *Id.* ¶¶ 18, 19. Plaintiff alleges that Defendant Harris told Dahland that Plaintiff (1) was "demoted from his position in Norfolk"; (2) was "terminated from his position in Charlotte"; (3) "ran the Norfolk office into the ground"; (4) "was transferred to Charlotte where his results were dismal"; and (5) "was not fit to be hired ... for any position." *Id.* ¶ 20. Plaintiff did not get the job with AML and claims his rejection was due to Defendant Harris' statements to Dahland. *Id.* ¶ 23.

Later in September 2003, Plaintiff reapplied to work for Full Spectrum and was rehired on December 12, 2003 as Branch Manager in Full Spectrum's Greensboro, North Carolina branch. (Ceco Aff. ¶ 6.) In conjunction with his rehire, Plaintiff filled out another application packet, including a second Mutual Agreement to Arbitrate Claims dated November 19, 2003 ("2003 Arbitration Agreement"). *Id.* ¶ 7. The 2003 Arbitration Agreement's scope was more narrow than that of the 2002 Arbitration Agreement, providing, in pertinent part, as follows:

> *Agreement to Arbitrate; Designated Claims* .... Except as otherwise provided in this Agreement, the Company and the Employee hereby consent to the resolution by arbitration of all claims or controversies *arising out of, relating to or associated with the Employee's employment with the Company* that the Employee may have against the Compa-

ny or that the Company may have against the Employee, *including any claims or controversies relating to the Employee's application for employment with the Company, the Company's actual or potential hiring of the Employee, the employment relationship itself, or its termination* (hereinafter the "Covered Claims"). The Covered Claims subject to this Agreement include, but are not limited to, ... tort claims ...

*Id.,* Ex. B (emphasis added).

## III. Discussion

Defendants move the Court to compel arbitration of all of Plaintiff's claims in this matter. Defendants argue that both arbitration agreements cover claims "arising out of, relating to or associated with [Plaintiff's] employment," *see* Ceco Aff., Ex. A § 1, Ex. B § 1, and thus, are broad enough to encompass Plaintiff's claims that following his resignation, Defendant Harris made allegedly false statements about his work performance at Full Spectrum to a potential employer. Defendants rely heavily on the Fourth Circuit's adoption of the "significant aspects" test in *Zandford v. Prudential–Bache Sec., Inc.,* 112 F.3d 723 (4th Cir.1997) in support of their motion.

In opposition to Defendants' motion, Plaintiff argues that Defendant Harris' statement that Plaintiff was "not fit to be hired ... for any position", *see* Compl. ¶ 20, is a general statement about Plaintiff's character, rather than a statement that arises out of his employment with Full Spectrum.[3] Plaintiff relies on cases holding that general statements about a person's character do not "arise out of employment." *See Dean Witter Reynolds, Inc. v. Ness,* 677 F.Supp. 866, 869–70 (D.S.C.1988); *Fleck v. E.F. Hutton Group,*

*Inc.,* 891 F.2d 1047, 1052 (2d Cir.1989); *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1167 (8th Cir.1984); *McMahon v. RMS Electronics, Inc.,* 618 F.Supp. 189, 192 (S.D.N.Y.1985).

After consideration of the parties' arguments, the Court concludes that all of the alleged defamatory statements by Defendant Harris concerning Plaintiff fall within the scope of the arbitration agreements. The *Zandford* case is instructive, and controls the Court's reasoning in this case. In *Zandford,* the plaintiff, an account executive at Prudential–Bache, was bound by an arbitration clause to arbitrate all claims "arising out of [his] employment or termination of employment ...." 112 F.3d at 725. Prudential–Bache terminated the plaintiff for account irregularities and initiated an arbitration against the plaintiff for money owed. The plaintiff counterclaimed for wrongful termination, abusive discharge, and libel. The parties resolved their dispute with a settlement agreement, which included a confidentiality clause. *Id.* at 725–26. Subsequently, the plaintiff's former manager testified against the plaintiff in a disciplinary proceeding brought by the National Association of Securities Dealers ("NASD"). The plaintiff then brought suit against Prudential–Bache and the former manager for violating the confidentiality clause of the settlement agreement. The District Court granted Prudential–Bache's motion to compel arbitration, and then subsequently granted Prudential–Bache's motion to confirm the arbitration award in its favor. *Id.* at 726.

On appeal, the Fourth Circuit emphasized the federal policy strongly favoring arbitration, pursuant to which " 'any doubts concerning the scope of arbitrable

---

3. In his brief and at oral argument, Plaintiff effectively conceded that the four remaining statements by Defendant Harris arise out of his employment and are arbitrable.

issues should be resolved in favor of arbitration.' " *Id.* at 726 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The court further noted that "[m]otions to compel arbitration ... should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* at 727 (quoting *People's Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir.1989)).

The court then adopted the so-called "significant aspects" test, established by the Eighth Circuit in *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir.1984). *Id.* at 728–29, 112 F.3d 723. Pursuant to that test, claims "arising out employment" "include claims that 'involve significant aspects of the employment relationship ...' " *Id.* at 728 (quoting *Morgan*, 729 F.2d at 1167). Other courts applying the *Morgan* test have reasoned that " 'the proper question is whether resolution of the claim depends upon evaluation of a party's performance ...' " *Id.* at 729 (quoting *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106, 109 (6th Cir.1985)). Based on the "significant aspects" test, the Fourth Circuit concluded that all of the plaintiff's claims turned on an evaluation of his performance while a broker for Prudential–Bache. Thus, the plaintiff's claims arose out of his employment and were arbitrable. *Id.* at 729–30.

A review of reported decisions reveals that tort claims for post-termination defamation have consistently been held to "arise out of employment" and thus, be deemed arbitrable, because such claims frequently involve an evaluation of the former employee's work performance. *Fleck*, 891 F.2d at 1052; *Zolezzi v. Dean Witter*

*Reynolds, Inc.*, 789 F.2d 1447, 1450 (9th Cir.1986); *Aspero*, 768 F.2d at 109; *Morgan*, 729 F.2d at 1167. Applying the "significant aspects" test to the instant case, the Court concludes that all of Plaintiff's claims do arise out of his employment, because resolution of his claims will necessarily involve an evaluation of his work performance at Full Spectrum. The Court disagrees that the statement that Plaintiff is "not fit to be hired ... for any position" is a general statement about his character. *See* Compl. ¶ 20. The statement was given in the context of a job reference, and it is undisputed that Defendant Harris did not know Plaintiff prior to his hire at Full Spectrum. Thus, any opinion given by Defendant Harris about Plaintiff's employability is necessarily going to be based on Defendant Harris' knowledge of Plaintiff's work performance at Full Spectrum, and determination of the truth or falsity of Harris' statements will turn on an evaluation of Plaintiff's work performance.

The cases relied on by Plaintiff are distinguishable from this case. In the cases cited by Plaintiff, none of the allegedly defamatory statements were given in the context of a job reference. Rather, they were general statements about the character of the former employee unrelated to his or her work performance. Because these statements did not implicate an evaluation of the work performance of the former employee, the courts in these cases properly held that such claims were not arbitrable. *See Morgan*, 729 F.2d at 1167 (statement that employee stole from co-workers' desks not arbitrable); *Ness*, 677 F.Supp. at 869–70 (defamation claim based on arrest warrant for trespassing on former employer's premises not arbitrable); *Fleck*, 891 F.2d at 1053 (statement that employee was a disbarred lawyer not arbitrable); *McMahon*, 618 F.Supp. at 192 (statement that employee was the company drunk not arbitrable).

In view of the Court's recommendation to grant the motion to compel arbitration, the Court also recommends dismissal of the action. *Ingram–Allen v. Iveys,* No. 1:03CV00196, 2004 WL 1462024, *2 (M.D.N.C. Feb. 26, 2004)(unpublished opinion)(Osteen, J.)(where all of Plaintiff's claims are sent to arbitration, dismissal is appropriate result).

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motion to compel arbitration of all of Plaintiff's claims in this matter (Pleading No. 6) be **GRANTED. IT IS FURTHER RECOMMENDED** that Defendants' motion to dismiss this action pending arbitration (Pleading No. 6) be **GRANTED.**

February 8, 2005.